NUMBER 13-00-341-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


SPOHN HOSPITAL, ET AL., Appellants,


v.


KAREN MAYER, ET AL., Appellees.

___________________________________________________________________


On appeal from the 319th District Court of Nueces County, Texas.

____________________________________________________________________


O P I N I O N


Before Chief Justice Valdez and Justices Yañez and Rodriguez

Opinion by Justice Yañez




This appeal arises out of a lawsuit filed by Karen Mayer and Sandra Hilbrich (1)alleging that negligence on the part of the staff of Spohn Hospital resulted in the
death of Raymond Gus Hilbrich while he was a patient at Spohn Hospital in Corpus Christi, Texas. Following a trial, in which the jury found the hospital
negligent, the court entered a judgment awarding damages to Karen Mayer, Sandra Hilbrich, and the estate of Raymond Hilbrich. Both parties appeal from the
judgment. (2) We modify the judgment of the trial court, and as modified, affirm.

BACKGROUND

Raymond Hilbrich was admitted to Spohn Hospital on August 1, 1995. He was eighty-six years old and suffering from heart problems when he was admitted. 
He also suffered from confusion and disorientation. On August 3, 1995, Hilbrich was observed attempting to get out of bed. Hilbrich was then moved to a
room near the nurses' station, and restrained with a posey vest, which is a cloth device designed to limit a patient's ability to get out of bed.

According to the telemetry technician on duty the night of August 4, 1995, Hilbrich made four calls after 11:00 p.m., requesting a nurse's assistance; however,
the nursing staff did not respond to the calls. (3) At 12:01 a.m., August 5, 1995, the telemetry monitor on Hilbrich showed him suffering from ventricular
fibrillation, and a nurse immediately ran to Hilbrich's room. Hilbrich was found beside his bed, with the posey vest wrapped around him and caught on the bed. 
The record includes testimony that the posey vest was wrapped around Hilbrich's neck. The nurse cut the vest away from Hilbrich and attempts were made to
revive him. Hilbrich was pronounced dead at 12:40 a.m. The medical examiner concluded that Hilbrich had died of asphyxia by hanging.

The plaintiffs filed their original petition on August 31, 1995. While preparing for trial, the defendant interviewed the telemetry technician and the nurses who
had been on duty while Hilbrich was a patient at the hospital, taking statements from all of them. The defendant refused to produce the statements of the
telemetry technician and one of the nurses during discovery, arguing that the statements were protected by the attorney-work product privilege. The plaintiffs
sent two letters threatening to file a motion to compel, although no such motion was ever filed. On December 10, 1999, one month before trial, the defendant
produced to the plaintiffs statements made by the telemetry technician and three nurses. The plaintiffs moved for sanctions, arguing that the telemetry
technician's statement had a direct bearing on the issue of breach of the standard of care, and further asserting that the technician could not be compelled to
appear at trial. Following a hearing on December 23, 1999, the trial court granted the plaintiffs' motion, ordering as a sanction that it be taken as established for
the purposes of the action that Hilbrich was restrained with the posey vest without a physician's order, and that Hilbrich made four requests for assistance
immediately prior to his death, all of which were ignored by the nursing staff.

The case proceeded to trial. Prior to hearing any testimony, the jury was instructed by the trial court to take as established the facts that were imposed as
sanctions. The plaintiffs raised the established facts several times during their examination of witnesses. The jury found that the negligence of Spohn Hospital,
acting through its employees, proximately caused the death of Mr. Hilbrich. The jury then found that damages in the amount of 1.3 million dollars should be
awarded to Karen Mayer, 1.9 million dollars should be awarded to Susan Hilbrich, and $110,000 should be awarded to the estate of Raymond Hilbrich. The
trial court issued a judgment for the plaintiffs, decreasing the damages to conform with statutory liability limits for health care providers, then adding
prejudgment interest. (4) See Tex. Rev. Civ. Stat. Ann. art. 4590i § 11.02 (Vernon Supp. 2001).

On appeal, the defendant raises six issues, arguing that: 1) the discovery sanctions were unjust and constituted reversible error; 2) the sanctions violated
defendant's due process rights under the constitutions of the United States and the State of Texas; 3) the trial court erred in admitting the witness statement of
the telemetry technician; 4) an instruction to the jury directing the jury to consider the facts established as sanctions constituted an improper comment on the
weight of the evidence; 5) the award of prejudgment interest was precluded by section 11.02(a) of article 4590i; and 6) the damages awarded were excessive
and against the great weight of the evidence. The plaintiffs argue, in a single issue, that the statutory liability limits do not limit the amount of money which
may be collected against the insurer of a health care provider. 

THE DISCOVERY DISPUTE

The plaintiffs filed their motion for sanctions following the defendant's production of written statements made to the defendant by four witnesses: Gary
Schmidt, the telemetry technician on duty at the time of Hilbrich's death; and Aurora Silva, Jane Madden, and Kathy Baldwin, all of whom were nurses at
Spohn Hospital. The motion specifically complains that: (1) the address for Schmidt given by defendant was in the state of Colorado, although by the time of
the filing of the motion Schmidt had moved back to Corpus Christi, Texas; and (2) Schmidt had not been deposed, and could not be compelled to appear at
trial. The plaintiffs argued that defendant's failure to produce Schmidt's statement effectively prevented them from adducing testimony from Schmidt that the
nurses at Spohn Hospital violated the standard of care when they purportedly ignored Hilbrich's requests for assistance.

The motion for sanctions also contained a complaint concerning the witness statement of Aurora Silva. Silva was the nurse who ordered that Hilbrich be
restrained with a posey vest, allegedly in violation of hospital policy. Plaintiffs argued, in the motion, that by withholding Silva's statement, the defendant
deprived plaintiffs of the "opportunity to obtain [Silva's] deposition to establish that the hospital deviated from the standard of care contained in its policies."

The trial court held a hearing on the motion for sanctions, received evidence and testimony, and heard argument from the parties, before granting the motion. 
At the hearing, the plaintiffs did not raise their complaints concerning the withholding of Silva's witness statement, although Silva's statement was admitted in
evidence. At the hearing, the plaintiffs stated that the motion was not based on any failure by defendant to report that Schmidt had returned to Corpus Christi or
the failure to provide a current address, but was based on defendant's failure to produce the statement made by Schmidt and a copy of a tape recording made by
Schmidt.

Schmidt was called by the plaintiffs as a witness at the sanctions hearing. He testified that he was the telemetry technician on duty when Hilbrich died. His job
was to monitor the equipment measuring Hilbrich's vital signs. When the nurses were not at their station, he also answered the call lights when patients called
for assistance. Following the conclusion of his shift on the night that Hilbrich died, Schmidt made a tape recording of his recollection of the events surrounding
Hilbrich's death. In July of 1997, the defendant interviewed Schmidt, and obtained a copy of his tape recording. Based on the recording, the defendant drafted
a statement, which Schmidt signed. In this statement, Schmidt asserted that Hilbrich called for assistance to the nurses station four times immediately prior to
his death. The calls were closely spaced, about five minutes apart. Schmidt stated that he either informed the nurses personally of each call, or had a nurse's
aide inform them. According to his statement, the nurses were "receiving report" at the time the calls were made. (5)

Schmidt moved to Colorado after Hilbrich's death. In 1997, Schmidt was contacted by both sides to this litigation. The plaintiffs contacted Schmidt first, when
an investigator working for the plaintiffs telephoned Schmidt. Schmidt told the investigator that he was reluctant to speak without consulting with the
defendant's attorney. He told the investigator that he wanted to talk to the defendant's attorney first, but the investigator should call back at a later time. 
Although this investigator said he would call back, he did not. Schmidt was then contacted by the defendant, and gave a copy of his tape to the defendant. 
Based upon this tape, the defendant drafted the witness statement, which Schmidt then signed.

Schmidt was later contacted again by an investigator for the plaintiffs. (6) Again, he wished to get permission before speaking. He contacted his friend and
former supervisor at Spohn Hospital, Liz Graf. Graf contacted the defendant's attorney, then called Schmidt and told him that he had "every right" to talk to the
plaintiffs. Schmidt spoke with plaintiffs' investigator; however, although the investigator prepared a written statement, Schmidt did not sign it because of errors
in the statement. The record on appeal does not show if the plaintiffs ever received a copy of the tape recording made by Schmidt.

Aurora Silva made a statement dated August 28, 1998. At the time of Hilbrich's death, Silva was in transition from being the supervisor of the 3:00 p.m. to
11:00 p.m. shift to the position of nurse manager. Silva gave the instructions to move Hilbrich to a room near the nurses' station and place him in a restraint. In
her statement, Silva says that "it never occurred to her she had not written the physician's order." Although Silva did not testify at the sanctions hearing, she did
testify at the trial on the merits.

The statement of Jane Madden produced on December 10, 1999, was substantially similar to her statement made on August 11, 1995, which was produced in
response to the plaintiffs' requests for disclosure. The statement of Kathy Baldwin produced on December 10, 1999, did not include any information that would
further the plaintiffs' case, and the plaintiffs do not argue that it did.

The plaintiffs' discovery requests and defendant's responses

On April 9, 1999, the plaintiffs mailed requests for disclosure to the defendant. Request for disclosure "i" requested any witness statements, as described in rule
192.3(h) of the Texas Rules of Civil Procedure. (7) On June 10, 1999, the defendant filed answers to the requests. The defendant's response to request "i" was to
attach statements made by two nurses, Jane Madden and Cheryl Braun. Attached to its responses, the defendant included a letter stating that, in regards to
request "i," it was withholding documents, claiming the documents were subject to the work-product privilege. The documents referenced in the letter were the
witness statements produced on December 10, 1999. The discovery responses did not include Schmidt's tape recording, nor do they make any mention of the
existence of the tape.

The plaintiffs sent a letter to defendant on June 18, 1999, stating that under rule 192.5 (c) (1), witness statements are not protected from discovery. See Tex. R.
Civ. P. 192.5(c). The plaintiffs requested that the defendant produce the statements, and further stated that the letter was to "serve as our written request that
you identify the information and material withheld." On July 12, 1999, the plaintiffs sent another letter to the defendant, threatening to request a hearing on the
defendant's objections to the requests for disclosure. The record contains no response to either of the plaintiffs' letters. On December 10, 1999, when the
defendant finally produced the statements in question, it stated that it had withheld the statements believing them to be exempt from discovery; however, in
light of recent case law the defendant had concluded that the statements were probably discoverable. The defendant did not give the names or citations of the
cases which resulted in its decision to produce the statements.

The sanctions 

The trial court granted the Plaintiffs' motion for sanctions and, as a sanction, issued an order stating: 

the following designated facts shall be taken as established for the purposes of this action:



 


 The immediate prior [sic] on the date of his death, Raymond Hilbrich made four (4) requests for assistance using the nurse's call button, spaced five minutes
apart, each of which was noted and each of which was ignored by the nursing staff;

 Raymond Hilbrich was placed in a Posey vest, a physical restraint, without physician order, either written or telephonic.


The rules of civil procedure provide that if a court finds a party is abusing the discovery process in resisting discovery, the court may impose sanctions. Tex. R.
Civ. P. 215.3. The sanctions available are those authorized by rule 215.2(b), paragraphs (1), (2), (3), (4), (5), and (8). Id. Rule 215.2(b)(3) authorizes a court to
issue an order that "designated facts shall be taken to be established for the purposes of the action in accordance with the claims of the party obtaining the
order." Tex. R. Civ. P. 215.2(b)(3). Such a sanctions order is subject to appellate review from the final judgment. Tex. R. Civ. P. 215.3.

Several of the nurses testified at trial that a failure to answer four calls from a patient violates the standard of care. None of the nurses admitted that they had
ignored calls. There was also evidence admitted that federal law requires a doctor's order to restrain a patient in a posey vest. Although the court ordered that it
be taken as established that Hilbrich was restrained with a posey vest without a physician's order, testimony was admitted that the decision to restrain Hilbrich
was approved by a physician. 

THE DEFENDANT'S CHALLENGE TO THE SANCTIONS

In its first issue on appeal, defendant initially argues that its conduct was proper and, therefore, did not justify the imposition of sanctions. We review a trial
court's decision to levy sanctions under an abuse of discretion standard. In Re Zenergy, Inc., 968 S.W.2d 1, 9 (Tex. App.-Corpus Christi 1997, orig.
proceeding). A trial court abuses its discretion when it fails to act with reference to any guiding rules and principles. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985); Zenergy, 968 S.W.2d at 9. 

Did the defendant's conduct justify sanctions?

With their letter on June 18, 1999, the plaintiffs served the defendant with a written request that the defendant identify the information and material being
withheld from production. Under the rules of civil procedure, within fifteen days of being served with that written request, the defendant was required to serve
a response that: "(1) describes the information or materials withheld that, without revealing the privileged information itself or otherwise waiving the privilege,
enables other parties to assess the applicability of the privilege." Tex. R. Civ. P. 193.3(b)(1). The defendant never served such a response.

The statements withheld by the defendant fall within the description of witness statements that are not protected by the work product privilege. Information
discoverable under rule 192.3, including witness statements, is not work-product protected from discovery, even if prepared in anticipation of litigation. Tex.
R. Civ. P. 192.5(c)(1). The definition of witness statement includes "a written statement signed or otherwise adopted or approved in writing by the person."
Tex. R. Civ. P. 192.3(h). Such a statement is discoverable "regardless of when the statement was made." Id. The rule also includes tape recordings. Id.

In the letter in which the defendant produced the witness statements at issue, the defendant stated that, although it believed the statements were exempt from
discovery when it received the plaintiffs' letter on June 18, 1999, "some case law interpretation since then has led us to conclude that those statements are
probably discoverable." The defendant has never revealed what case law led to this conclusion; however, it is noteworthy that the interpretation of case law did
not result in the witness statements, including the potentially damaging statements of Gary Schmidt, being produced until December 10, 1999, with trial
scheduled to begin on January 10, 2000. Even if the defendant believed that the statements were privileged, it was obligated under rule 192.3(b)(1) to file a
response describing the statement it was withholding, to enable the plaintiffs to assess the applicability of the privilege. The defendant never filed a response
describing the documents it was withholding. The responses the defendant did file never mentioned that it was withholding a tape recording. At the sanctions
hearing, the defendant's counsel stated that he had forgotten about the tape, and promised that if he did actually have a copy, he would provide it to the plaintiffs
immediately. The trial court was within its discretion in finding that the defendant engaged in discovery abuse and such abuse merited sanctions.

Were the sanctions unjust?

Discovery sanctions imposed by a trial court are within the court's discretion and will be set aside only for a clear abuse of discretion. Zenergy, 968 S.W.2d at
9. If the sanctions imposed are not just, a trial court abuses its discretion. Transamerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991);
Zenergy, 968 S.W.2d at 9. When determining if the trial court abused its discretion in imposing a sanction, we make an independent inquiry of the entire
record, including the evidence admitted at the sanctions hearing, arguments of counsel, the written discovery on file, and the circumstances surrounding the
party's alleged discovery abuse. Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852 (Tex. 1992); U.S. Fid. and Guar. Co. v. Rossa, 830 S.W.2d 668, 672 (Tex.
App.-Waco 1992, writ denied).

To determine if a sanction is just, we apply a two-prong test. Transamerican, 811 S.W.2d at 917; Zenergy, 968 S.W.2d at 9. First, the sanction must relate
directly to the offensive conduct; the sanction must be directed against the abuse and toward remedying the prejudice to the innocent party. Transamerican,
811 S.W.2d at 917. Second, the sanction must not be excessive: the punishment should fit the crime. Id. A sanction imposed in response to discovery abuse
should be no more severe than necessary to satisfy its legitimate purposes. Id. 

Discovery sanctions which are so severe that they preclude presentation on the merits should not be assessed absent a party's flagrant bad faith or counsel's
callous disregard for the responsibilities of discovery under the rules. Id. at 918. Sanctions should not be used to adjudicate the merits of a claim or defense
unless a party's obstruction of the discovery process justifies the presumption that the claim or defense lacks merit. Id.; Zenergy, 968 S.W.2d at 9. The supreme
court has held that sanctions such as the type imposed in the case now before this Court are the type which inhibit the presentation of a party's claims. Braden
v. Downey, 811 S.W.2d 922, 929 (Tex. 1991). The effect of these types of sanctions is to adjudicate claims or defenses not on their merits, but on the manner in
which a party, or the party's attorney, conducted discovery. Id. Such sanctions "must be reserved for circumstances in which a party has so abused the rules of
procedure, despite imposition of lesser sanctions, that the party's position can be presumed to lack merit and it would be unjust to permit the party to present the
substance of that position before the court." Id. 

Even when a party or the party's counsel, has demonstrated "flagrant bad faith" or a "callous disregard for the responsibilities of discovery under the rules," such
sanctions should be applied only when lesser sanctions have first been tested "to determine whether they are adequate to secure compliance, deterrence, and
punishment of the offender." Blackmon, 841 S.W.2d at 849; Zenergy, 968 S.W.2d at 9. The legitimate purposes of discovery sanctions are to secure
compliance with discovery rules, deter other litigants from similar misconduct, and punish violators. See Blackmon, 841 S.W.2d at 849. However, although
punishment and deterrence are legitimate purposes for sanctions, they do not justify trial by sanctions. Transamerican, 811 S.W.2d at 918. "Case determinative
sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would
promote compliance with the rules." GTE Communications Corp. v. Tanner, 856 S.W.2d 725, 729 (Tex. 1993).

The defendant failed to comply with the discovery request relating to Schmidt's statement and the tape recording upon which it was based. The plaintiffs
argued that Schmidt's statement was the only evidence that he was a witness with relevant knowledge. The only indication in the record of the level of
Schmidt's involvement in the events around Hilbrich's death is in the August 11, 1995 statement by Jane Madden, in which she stated that she was told by the
"monitor tech." that she needed to check on Hilbrich. (8) The defendant withheld a statement that, under the rules, was not protected from discovery, and which
was extremely damaging to the defendant's case. The trial court could, within its discretion, have determined that the defendant's conduct was so egregious that
it could only be properly addressed with the sanctions imposed. The defendant's first issue on appeal is overruled. 

In its second issue, the defendant argues that the trial court's imposition of sanctions violated defendant's due process rights under the constitutions of the
United States and the State of Texas. The supreme court has held that the imposition of severe sanctions is limited by constitutional due process. 
Transamerican, 811 S.W.2d at 918. However, a court may assess sanctions so severe as to preclude presentation of the merits of the case when the party has
demonstrated "flagrant bad faith," or the party's counsel has demonstrated a "callous disregard for the responsibilities of discovery under the rules." Id. (citing
National Hockey League v. Metro. Hockey Club, Inc., 427 U. S. 639, 642-43 (1976)). In the instant case, the refusal to turn over Schmidt's statement and the
tape, and the failure to properly describe the statement and tape, constitute a callous disregard for the responsibilities of discovery. Issue number two is
overruled.

THE DEFENDANT'S HEARSAY CHALLENGE 

In its third issue, the defendant argues that the trial court erred by admitting Schmidt's statement in evidence at trial. Decisions about the admissibility of
evidence are left to the sound discretion of the trial court. Owens-Corning Fiberglass Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); Pegasus Energy Corp.
v. Cheyenne Petroleum Co., 3 S.W.3d 112, 133 (Tex. App.-Corpus Christi 1999, pet. denied). To obtain a reversal based on an evidentiary ruling, an appellant
must not only show that the trial court committed error, but must further show that the error was reasonably calculated to cause and probably did cause rendition
of an improper judgment. Tex. R. App. P. 44.1; Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex.1989);Pegasus Energy Corp., 3 S.W.3d at 133. 
Further, appellate courts will ordinarily not find reversible error for erroneous rulings on admissibility of evidence where the evidence in question is cumulative
and not controlling on a material issue dispositive of the case; thus, we must review the entire record to determine whether the judgment was controlled by the
evidence that should have been excluded. Gee, 765 S.W.2d at 396.

Schmidt's statement was admitted during the testimony of Jacqueline Johnson. Johnson testified as an expert on nursing care for elderly persons. Johnson's
expertise extended to issues arising from the application of restraints to elderly patients. Johnson formed her opinion based on several statements, including
Schmidt's statement. After Johnson identified the statements she had used, the plaintiffs attempted to admit the statements, including Schmidt's, in evidence. 
The defendant objected, arguing that Schmidt's statement constituted inadmissible hearsay. 

The contents of Schmidt's statement are essentially the same as the facts established by the trial court's sanctions. According to his statement, while the nurses
were receiving report, Schmidt monitored the patients' call lights. Starting "around 11:50 or 11:45," Schmidt received four calls from Hilbrich, requesting a
nurse, at intervals of approximately five minutes. Schmidt informed the nursing staff of the calls from Hilbrich, but the nurses took no action.

Even assuming arguendo that the trial court erred by admitting Schmidt's statement, the admission of the statement would not support reversal. Schmidt's
statement is cumulative of the facts established by the sanction. Thus, the admission of the statement is cumulative. See id. The jury was already required to
take, as established facts, that Hilbrich made four requests for assistance, spaced five minutes apart, which were noted and ignored by the nursing staff. 
Therefore, any error in admitting the statement in evidence would be harmless error. Tex. R. App. P. 44.1(a) (1); Gee, 765 S.W.2d at 396; Pegasus Energy
Corp., 3 S.W.3d at 133. The defendant's third issue is overruled.

THE JURY CHARGE

In its fourth issue, the defendant argues that the jury charge contained language which constituted an impermissible comment on the weight of the evidence. A
trial court has great discretion in submitting instructions and definitions to the jury. Grenier v. Joe Camp, Inc., 900 S.W.2d 848, 850 (Tex. App.-Corpus Christi
1995, no writ);Harris v. Harris, 765 S.W.2d 798, 801 (Tex. App.-Houston [14th Dist.] 1989, writ denied). A jury charge must include such explanatory
instructions and definitions as will aid and assist the jury in answering the jury questions submitted. Tex. R. Civ. P. 277; Grenier, 900 S.W.2d at 850; Redwine
v. AAA Life Ins. Co., 852 S.W.2d 10, 14 (Tex. App.-Dallas 1993, no writ). After examining the entire charge, we may find that an instruction constitutes an
impermissible comment on the weight of the evidence if we determine that the judge assumed the truth of a material controverted fact, or exaggerated,
minimized, or withdrew some pertinent evidence from the jury's consideration. Grenier, 900 S.W.2d at 850. An instruction also will be held to be an improper
comment on the weight of the evidence if it suggests to the jury the trial judge's opinion concerning the matter about which the jury is asked. Id. (citing
Redwine, 852 S.W.2d at 14). Although a trial court may not comment on the weight of the evidence, it may incidentally comment where the comment is
necessary or proper as part of an explanatory instruction or definition. Tex. R. Civ. P. 277; Grenier, 900 S.W.2d at 850.

The defendant contends that the trial court erred in three separate places in the charge where mention is made of the facts established by the trial court as
sanctions. The opening paragraph of the charge begins with the sentence:

This case is submitted to you on questions consisting of specific questions about the facts in this case, which are either those facts that I have instructed you to
take as established in this case or facts which you must decide from the evidence you have heard at this trial.Following a list of definitions to be applied in the
case, the court then included the following under the heading of "GENERAL INSTRUCTIONS:"

At the beginning of the trial, I instructed you concerning certain facts which you must take as established in this case. You must determine all other facts from
the credible testimony or evidence admitted in this case. A fact may be established by direct evidence or by circumstantial evidence when proved by a witness
who saw the act done or heard the words spoken or by documentary evidence. A fact is established by circumstantial evidence when it may fairly and
reasonably be inferred from other facts proved.

This case is submitted to you on questions about the facts which have either been determined by the court or which you must decide from the direct or
circumstantial evidence or both. In answering these specific questions, answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer
must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "Yes", then answer "No." Whenever a
question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence.



The instructions contained in the jury charge do not constitute an impermissible comment on the weight of the evidence. The comments are necessary and
proper to instruct the jury as to the effect of the sanctions. The trial court was not exaggerating the established facts, nor was the court suggesting its opinion to
the jury, but rather was directing the jury to consider those facts equally with the facts the jury derived from its own deliberations. We find that the trial court
did not abuse its discretion in issuing these instructions to the jury. Issue number four is overruled.

PREJUDGMENT INTEREST

In its fifth issue, the defendant argues that the trial court erred by awarding prejudgment interest. The parties agreed that, under the Medical Liability and
Insurance Improvement Act (MLIIA), damages were limited to $1,369,900.00. SeeTex. Rev. Civ. Stat. Ann. art 4590i § 11.02(a) (Vernon Supp. 2001). (9) The
judgment of the trial court awards the plaintiffs $1,369,000.00 in damages, but also orders the defendants to pay prejudgment interest on that amount, thus
placing the total award in excess of the $1,369,000 limit. The defendant contends that the liability limits contained in the MLIIA apply to prejudgment interest;
therefore, the trial court erred in awarding prejudgment interest beyond the $1,369,900 limit. In support of this position, the defendant cites the supreme court's
decision in Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887 (Tex. 2000).

In Auld, the supreme court was faced with the question of whether prejudgment interest constituted damages, and as such, were included in the liability limits
contained in the MLIIA. Id. at 898. The supreme court concluded that the MLIIA's limits on "civil liability for damages" applied to pre-judgment interest;
therefore, a plaintiff may recover pre-judgment interest on damages subject to the limits only up to the amount of the limits. Id. at 901. Under Auld, a plaintiff
may recover damages only up to the caps contained in the MLIIA, and if pre-judgment interest would result in an award in excess of the caps, then any interest
above the liability limits may not be recovered. Id. If the damages awarded are equal to, or in excess of, the liability limits, then the plaintiff may not recover
prejudgment interest. Id.

We find that Auld is controlling in the case now before this Court. Although one appellate court has held that Auld is not applicable to causes of action accruing
after September 1, 1995, (10) this cause of action accrued in August of 1995 and thus is subject to the holding in Auld. (11) The trial court erred in awarding
prejudgment interest in excess of the damage caps contained in the MLIIA. The damages awarded by the jury were in excess of the $1,369,900 liability limits;
therefore the plaintiffs could not recover prejudgment interest. Issue number five is sustained. We modify the judgment of the trial court to exclude the award
of prejudgment interest.

THE DAMAGES

In its sixth issue, the defendant argues that the damages awarded were excessive and against the great weight and preponderance of the evidence. (12)

When considering a complaint that a jury awarded excessive damages, the court of appeals employs the same test as for any factual sufficiency question. 
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex. 1998). The court of appeals must consider and weigh all of the evidence, not just that evidence
which supports the verdict. Id. at 406-07. A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that
the verdict is clearly wrong and unjust. Id. at 407, Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Because we are not a fact finder, we may not pass upon the
witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. Maritime Overseas Corp., 971
S.W.2d at 407. We are not required to detail all the evidence supporting a jury's verdict, unless we reverse that verdict because we find it to be so contrary to
the overwhelming weight of the evidence that it is clearly wrong and unjust. Id. 

The "generally nebulous issues of pain and suffering and loss of society" are "necessarily speculative, and it is peculiarly within the province of the jury to
resolve these matters and set the amount of such damages." Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759, 780 (Tex. App.-Corpus Christi 1999, pet.
denied). Evidence of a loss of enjoyment of life may be considered in determining damages in general or for pain and suffering. Id.; Fibreboard Corp. v. Pool,
813 S.W.2d 658, 674-75 (Tex. App.-Texarkana 1991, writ denied).

In its brief as appellant, the defendant points out evidence in the record of Hilbrich's declining health, as well as testimony that Hilbrich's life-expectancy was
probably less than a year. However, the defendant also points out evidence in the record that the plaintiffs spent a great deal of time with Hilbrich, that he gave
them love and support, and that they missed him. Ms. Mayer testified that she did not like knowing that her father had died by asphyxia by hanging, and it
bothered her that she was not with him when he died. Sandra Hilbrich lived with her father, interacted with him on a daily basis, and testified to her feelings of
loneliness without him. We cannot find on this record that the jury's verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.

The defendant also contends that there was no evidence to support any award of damages to Hilbrich's estate, other than the funeral expenses. Defendant
argues, without citation to any authority, that the award of pain and mental anguish damages was erroneous because "no one witnessed Mr. Hilbrich's death, and
it requires speculation to conclude that Mr. Hilbrich suffered any pain and mental anguish."

A "no evidence" standard of review is applied when the party not bearing the burden of proof challenges a finding of fact by arguing that the evidence is legally
insufficient to support the finding. Edwards v. Pena, 38 S.W.3d 191, 196 (Tex. App.-Corpus Christi 2001, no pet.); Hickey v. Couchman, 797 S.W.2d 103, 109
(Tex. App.-Corpus Christi 1990, writ denied). When reviewing a legal sufficiency challenge, we consider all the evidence in the light most favorable to the
prevailing party, indulging every reasonable inference in that party's favor. Associated Indem. Corp. v. CAT Contracting, 964 S.W.2d 276, 286 (Tex. 1998);
Edwards, 38 S.W.3d at 196. If any evidence of probative value supports the finding, we must uphold the jury's finding. Edwards, 38 S.W.3d at 196. We
sustain a legal sufficiency challenge if the record discloses: (1) that there is a complete absence of evidence of a vital fact; (2) that the court is barred by rules of
law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a
scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. Merrell Dow Pharms, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997);
Edwards, 38 S.W.3d at 196.

The record contains the certificate of death in which the Nueces County Medical Examiner concluded that Hilbrich died of asphyxia by hanging. This
document was admitted in evidence without objection. This document constitutes some evidence of probative value that would support the jury's finding of
damages for pain and mental anguish suffered by Hilbrich prior to his death. Defendant's sixth issue is overruled.

LIABILITY LIMITS AND THE STOWERS DOCTRINE

The plaintiffs' sole issue on appeal is based on section 11.02(c) of the MLIIA. See Tex. Rev. Civ. Stat. Ann. art. 4590i § 11.02(c) (Vernon Supp. 2001). Section
11.02(c) states "[t]his section shall not limit the liability of any insurer where facts exist that would enable a party to invoke the common law theory of recovery
commonly known in Texas as the 'Stowers Doctrine.'" Id. The plaintiffs argue that this section demonstrates that the legislature intended there to be
circumstances in which the insurer would be liable in excess of the caps, while the insured would retain the protection of the caps. We do not address the
relation of the MLIIA to theStowers Doctrine because the plaintiffs failed to establish the elements of a Stowersclaim.

Under the doctrine established in G.A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved), an insured
can sue his insurer for negligently failing to settle a third party's claim against the insured. Trinity Universal Ins. Co. v. Bleeker, 966 S.W.2d 489, 491 (Tex.
1998). Under Stowers, an insured has a cause of action against his insurer when the insured suffers a judgment in excess of his policy limits, after his insurance
company negligently fails to accept a settlement offer within the policy limits. Stowers, 15 S.W.2d at 546.

In the instant case, we do not need to determine the interaction of the Stowers doctrine and the MLIIA, because the plaintiffs have not met the requirement that
the insured suffer a judgment in excess of the policy limit, as is necessary for a validStowers claim to exist. At the hearing on the plaintiffs' motion for the entry
of judgment, the plaintiffs introduced the testimony of Carol Eschenfelder, the director of insurance and risk financing for Christus Health, the parent company
of Spohn Hospital. Eschenfelder testified, on cross-examination, that Spohn Hospital was covered by a self-insurance trust for damages up to $5,000,000.00
per occurrence. Documents introduced by the plaintiffs supported this testimony. The total damages awarded by the jury prior to the imposition of the damage
caps were $3,310,000.00. According to the plaintiffs' calculations, prejudgment interest would increase this amount to $4,799,047.00 Thus, the total judgment,
including prejudgment interest, was within the $5,000,000.00 limit of the defendant's insurance coverage, and the defendant would not have a cause of action
under Stowers. Plaintiffs' sole issue is overruled.

The judgment of the trial court is MODIFIED to delete the award of prejudgment interest, and is AFFIRMED as MODIFIED.



 

LINDA REYNA YAÑEZ

Justice





Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

20th day of December, 2001.

1. Karen Mayer and Sandra Hilbrich, the daughters of the deceased, filed the lawsuit individually and as representatives of the estate of the deceased.

2. We will refer to Karen Mayer and Sandra Hilbrich as "plaintiffs," and Spohn Hospital as "defendant" throughout the opinion. All references to "Hilbrich" are
to Raymond Hilbrich.

3. Hilbrich was a patient on the telemetry floor of the hospital. He was able to call for a nurse by pressing a button, which activated a "call light" at the nurses'
station, alerting the nurses that a patient needed assistance. Patients on the telemetry floor also have monitoring devices on their bodies which relay information
to a monitoring station near the nurses' station. A technician at the monitoring station keeps track of the patients' vital signs, and notifies the staff of any
noteworthy changes in these signs.

4. The final judgment awarded damages of: $780,000 to Karen Mayer; $1,140,00 to Sandra Hilbrich; and $66,150 to the estate of Raymond Hilbrich.

5. When the nurses' shifts change, the outgoing shift reports to the incoming shift as to the status of patients in their care.

6. The record is unclear when this contact occurred, although at the sanctions hearing it was described as "the recent past."

7. Texas Rule of Civil Procedure 192.3(h) provides:



Statements of Persons with Knowledge of Relevant Facts. A party may obtain discovery of the statement of any person with knowledge of relevant facts-a
"witness statement" -regardless of when the statement was made. A witness statement is (1) a written statement signed or otherwise adopted or approved in
writing by the person making it, or (2) a stenographic, mechanical, electrical, or other type of recording of a witness's oral statement, or any substantially
verbatim transcription of such a recording. Notes taken during a conversation or interview with a witness are not a witness statement. Any person may obtain,
upon written request, his or her own statement concerning the lawsuit, which is in the possession, custody or control of any party.



Tex. R. Civ. P. 192.3(h).

8. This was the point at which Madden entered Hilbrich's room and found him deceased. Madden's statement does not refer to the four calls for assistance
contained in Schmidt's statement.

9. The MLIIA limits liability in any health care liability claim where final judgment is rendered against a physician or health care provider to an amount not to
exceed $500,000; however, this limit is adjusted for inflation, or deflation, under a formula based on the consumer price index. Tex. Rev. Civ. Stat. Ann. art
4590i §§ 11.02(a), 11.04 (Vernon Supp. 2001).

10. See Columbia Hosp. Corp. of Houston v. Moore, 43 S.W.3d 553, 558 (Tex. App.-Houston [1st Dist.] no pet.) (holding that section 16.02 of the MLIIA,
which became effective September 1, 1995, requires that judgments include prejudgment interest).

11. Because this case is not subject to section 16.02, we do not express an opinion on the effect section 16.02 may have on the award of prejudgment interest in
cases accruing after September 1, 1995.

12. We note that the defendant cites no authority in its discussion of this issue, in violation of the rules of appellate procedure. See Tex. R. App. P. 38.1(h).
Nonetheless, we have decided to address this issue. Cf. Barnum v. Munson, Munson, Pierce and Cardwell, P.C., 998 S.W.2d 284, 287 (Tex. App.-Dallas 1999,
pet. denied)(overruling issue because of appellant's failure to support issue with authority).