NO. 07-01-0169-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



FEBRUARY 12, 2002



______________________________


 


PATRICIA GARCIA, APPELLANT



V.



BEVERLY WORKMAN, APPELLEE




_________________________________



FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;



NO. 99-587,846; HONORABLE RICHARD DAMBOLD, JUDGE



_______________________________



Before QUINN and REAVIS and JOHNSON, JJ. 

 Appellant Patricia Garcia challenges a judgment based on a jury verdict that she
take nothing against appellee Beverly Workman in her action for personal injuries
sustained when Workman's vehicle rear-ended the car in which Garcia was a passenger. 
By one issue, Garcia contends the jury verdict was against the great weight and
preponderance of the evidence and manifestly unjust. Based upon the rationale expressed
herein, we affirm. 

 Garcia was a passenger in a car driven by her sister, Lucy Cisneros. (1) While the car
was stopped at a controlled intersection waiting for a turn signal, a pickup driven by
Workman entered the turning lane behind Garcia and her sister and came to a complete
stop. Before the light changed, Workman's foot slipped off the brake pedal and hit the
accelerator, causing the pickup to move forward and hit Cisneros's car from the rear. The
three women got out of their vehicles to investigate the damages. As they discussed the
accident, Workman wiped off her tennis shoe and explained that the pedal was slippery
and that her foot had slipped off the brake. After the two drivers determined that no one
was injured and that only minor damage to the vehicles occurred, they agreed not to call
the police and left the scene. After the accident, Garcia began to have neck pains, which
increased to the point that she went to the emergency room for an examination. She was
given a neck brace and told to visit another doctor later in the week. The next day she
went to her family physician who replaced her neck brace and helped her to schedule an
appointment with the physician recommended during treatment in the emergency room. 
She met with this doctor and he classified her injury as mild whiplash, from which she
suffered no permanent injuries.

 Garcia did not contend that the liability was established as a matter of law. Instead,
she alleged that the occurrence was proximately caused by "one or more" of Workman's
(a) failure to keep a proper lookout, (b) failure to timely apply the brakes, (c) failure to apply
the brakes to avoid the collision, (d) driving at a speed which was greater than an ordinary
prudent person would have done, (e) failure to turn her vehicle to the right or left to avoid
the collision, (f) failure to maintain an assured clear distance between the two vehicles, (g)
failure to stop at the traffic control signal, and (h) failure to obey a traffic control signal. 
Notwithstanding these allegations, according to the undisputed evidence, the pickup driven
by Workman did make a complete stop behind Cisneros's car.

 At trial Workman testified she was driving her husband's pickup and that it had
recently been "detailed" and Armor All Protectant had been applied to the brake pedal. 
She also stated that she did not remember the pedal being slick; however, she
acknowledged that during her deposition, when asked when she first noticed that the pedal
was slick, she responded, "To be perfectly honest, I don't know. I'm sure probably the first
time I applied I was aware of it." Then, in response to a question about whether she
noticed that the pedal was slick when she stopped after backing out of her driveway, she
said, "I am sure I did. I am sorry, sir, I don't recall." Her further testimony revealed that she
noticed the pedal was slick three times before the collision. When she was asked why she
did not stop after noticing that the pedal was slick three times, she responded "I really
didn't realize it was that slick." Workman concluded, however, that although she was
aware that the pedal had Armor All on it, she had no problem controlling her vehicle or
keeping her foot firmly planted on the brake. Workman's testimony regarding being
careless was also conflicting. On direct examination by her counsel, she did not
acknowledge any act of carelessness, but on cross-examination, she "guessed" that her
failure to wipe off the brake pedal may have been careless. 

 Upon completion of the evidence the trial court submitted its charge to the jury. 
After defining the terms negligence, ordinary care, and proximate cause, question one
asked the jury if the negligence, if any, of Workman proximately caused the occurrence in
question. Based on the jury's "no" answer to the first question, they did not answer the
remaining questions and the trial court signed its judgment that Garcia take nothing on her
action. 

 By her only issue, Garcia contends that the jury verdict is against the great weight
and preponderance of the evidence and manifestly unjust because neither the evidence
nor inferences supports the jury verdict. We disagree. Because the issue presents a
challenge to the factual sufficiency of the evidence, we must consider and weigh all the
evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986); Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985). The trier of fact is the sole
judge of the credibility of the witnesses and the weight given their testimony, Leyva v.
Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962), and may believe one witness and
disbelieve another and resolve inconsistencies in testimony. McGalliard v. Kuhlmann, 722
S.W.2d 694, 697 (Tex. 1986). Finally, we are not to reweigh the evidence and set aside
the jury verdict merely because we feel that a different result is more reasonable. Pool,
715 S.W.2d at 634. 

 Workman's testimony, when taken as a whole, does not unequivocally compel a
finding that she was negligent or that her conduct was a proximate cause of the occurrence
in question as those terms were defined in the charge. She admitted she was careless,
but denied it when asked by her own counsel. An affirmative finding to question one
required the jury to find that Workman's conduct was negligent and proximately caused the
collision, as the terms were defined in the charge. As is well established, proximate cause
includes two elements: cause-in-fact and foreseeability, Read v. Scott Fetzer Co., 990
S.W.2d 732, 737 (Tex. 1998), and is one that is "particularly within the province of the jury"
and may be disregarded only in exceptional circumstances. Browning-Ferris, Inc. v.
Hobson, 967 S.W.2d 543, 546 (Tex.App.--Houston [14th Dist.] 1998, pet. denied); see also
Stone v. Sulak, 994 S.W.2d 348, 351 (Tex.App.--Austin 1999, no pet.) (holding that in a
rear-end accident, negligence was not established as a matter of law). On appeal, Garcia
does not contend that excessive speed, failure to maintain a proper lookout, or other
similar factors caused the accident, but candidly emphasizes that driving the pickup with
the slick brake pedal compels that we disregard the verdict. However, considering the
unique evidence presented to the jury, they could have perceived that Workman did not
violate her duty to exercise "ordinary care" or that the two elements of proximate cause
were not established. Moreover, because the "no" answer is nothing more than a failure
of Garcia to discharge her burden of proof, Lovato v. Ranger Ins. Co., 597 S.W.2d 34, 36
n.1 (Tex.Civ.App.--Amarillo 1980, writ ref'd n.r.e.), we conclude that the jury's answer is not
manifestly unjust. Garcia's sole issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice



Do not publish.
1. The surname Cisneros is spelled inconsistently in the record; however, in this
opinion we will use the more common spelling.



EM>59 S.W.3d 773, 777
(Tex.App.-Austin 2001, pet. ref'd). If a court determines the Legislature intended to
impose cumulative sentences for the same conduct, the court may end its inquiry and
impose both sentences. Reina, 940 S.W.2d at 775.

 When the same act or transaction violates two different penal statutes, the two
offenses are the same for double jeopardy purposes if one of the offenses contains all the
elements of the other; they are not the same if each offense has a unique element. 
Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932). 
One of the elements of aggravated kidnapping is the abduction of another. Tex. Pen.
Code Ann. § 20.04(a) & (b) (Vernon 2003). Abduction is not an element of aggravated
assault. Tex. Pen. Code Ann. § 22.02 (Vernon 2003). In order to prove the aggravated
assault charge in this case, the State was required to prove that appellant caused, or
threatened to cause, bodily injury to the victim. Causing, or threatening to cause, bodily
injury was not an element of aggravated kidnapping as alleged here. Consequently, the
offenses for which appellant was tried and convicted each had a unique element and were
not the "same offense" under the Blockburger analysis.

 Even when two penal statutes have unique elements and are, therefore, not the
same under Blockburger, other factors may lead to the conclusion that the Legislature did
not intend to permit multiple punishments when the same conduct violates both statutes. 
Duvall, 59 S.W.2d at 777 (citing Ervin v. State, 991 S.W.2d 804, 814 (Tex.Cr.App. 1999)). 
However, none of the relevant factors enumerated in the Ervin decision apply to the
offenses at issue in this case. Aggravated kidnapping, under the facts of this case, is a
first degree felony, while aggravated assault is a second degree. Moreover, the offenses
are not contained in the same statute, are not phrased in the alternative, and are not
similarly named. Nor, is the gravamen of aggravated kidnapping and aggravated assault
the same. Rather, the focus of kidnapping is abduction, while the focus of aggravated
assault is injury or the threat of injury. Duvall, 59 S.W.2d at 778. Appellant does not
assert an imputed theory of liability which would result in the offenses being considered
the same under Blockburger. Finally, appellant does not provide, nor have we discovered
in our independent review, any legislative history containing an articulation of an intent to
treat the offenses as the same or different for double jeopardy purposes. Thus, we are not
persuaded that the Legislature intended to prohibit multiple punishments under the
circumstances shown here. Appellant's first point of error is overruled.

 Appellant suggests by his second point of error, as we perceive it, that since the first
paragraph of count one alleged conspiracy to commit murder as the underlying offense for
engaging in organized criminal activity, the offense of aggravated assault was necessarily
a lesser included one. Then, because the trial court essentially entered a judgment of
acquittal as to that allegation and any of its lesser included offenses when it partially
granted appellant's motion for instructed verdict, double jeopardy barred his conviction for
aggravated assault under count two of the indictment. We disagree.

 During the hearing on appellant's motion for instructed verdict, the trial court initially
granted the motion in its entirety. The State, however, requested and was granted the
opportunity to brief the court on the issues raised by the motion. During the subsequent
proceedings, the State, while not joining in appellant's motion, agreed not "to preserve the
point for appeal purposes . . . the granting of the Motion for Instructed Verdict as to the
engaging in organized criminal activity." With respect to the first paragraph of count one,
the State explained, "it's my understanding of the law that conspiracy to commit a crime
like murder is not a lesser included [offense] of engaging in organized criminal activity, and
so that charge would not be able to go to the Jury." Later in the proceeding, the court
announced, "All right, sir. I'm going to adopt the State's position." Taken together, we
believe the foregoing statements illustrate an intent by the State to abandon, and an intent
by the court to accept the abandonment of, the first allegation included in the indictment.

 The only legal consequence of an abandoned allegation is that a criminal defendant
cannot in a subsequent trial be prosecuted on the abandoned count. Ex parte Scelles, 511
S.W.2d 300, 301 (Tex.Cr.App. 1974). Since the State abandoned the conspiracy to
commit murder allegation prior to its submission to the jury, the trial court's written order
partially granting the motion for instructed verdict did not amount to the rendition of an
acquittal as to that allegation. As a consequence, double jeopardy did not bar appellant's
conviction under count two of the indictment. Appellant's second point of error is
overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice



Do not publish.


 


 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
2. The pleading was actually entitled "The State's Motion for Rule 49.7
Reconsideration En Banc." In its prayer for relief, however, the State requested that the
Court grant its motion for rehearing. Moreover, in answer to appellant's response to the
motion, the State filed "The State's Reply to Appellee's Response to the Motion for
Rehearing." It is clear the State is attempting to avail itself of the procedures under Rule
49.1 of the Texas Rules of Appellate Procedure. Since it is the substance of the motion
that governs, not the title, we will treat the State's pleading as a motion for rehearing. Ex
parte Caldwell, 58 S.W.3d 127, 130 (Tex.Cr.App. 2000).
3. The victim survived the shooting, but was "unavailable" to testify at trial.
4. Since none of the statutes at issue have changed substantively since the trial on
the merits of this case, all citations will reference the current incarnations of those statutes. 

5. In the original indictment, each count contained two paragraphs. Prior to jury
selection, however, the State abandoned the second paragraph of count two.
6. During the hearing on appellant's motion for instructed verdict, the State
abandoned the first paragraph of count one, the charge alleging conspiracy to commit
murder as the object offense of engaging in organized criminal activity. 
7. The Double Jeopardy Clause of the United States Constitution was made
applicable to the states through the Fourteenth Amendment in Benton v. Maryland, 395
U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The clause provides, in pertinent part,
"[N]or shall any person be subject for the same offense to be twice put in jeopardy of life
or limb."