## HENWOOD v. RICHARDSON et al.

### No. 5941.

Court of Civil Appeals of Texas. Texarkana.

May 21, 1942.

Rehearing Denied June 11, 1942.

Ramey, Calhoun, Marsh & Sheehy and Joe W. Sheehy, all of Tyler, and Otis T. Dunagan, of Gilmer, for appellant.

Florence, Florence & Meredith, of Gilmer, for appellees.

JOHNSON, Chief Justice.

This is an action by appellees Mrs. Iva Mae Richardson, individually and as next friend of her minor daughter, Mary Sue Richardson, against appellant, Berryman Henwood, Trustee, St. Louis Southwestern Railway Company of Texas, Debtor, to recover damages for the alleged wrongful killing of J. C. Richardson and Joe Lynn Richardson by collision of one of appellant's trains with a school bus owned and at the time operated by said J. C. Richardson

and in which the said Joe Lynn Richardson was also riding, November 14, 1940, at a point where a public road crosses appellant's tracks in Upshur County, Texas. Said J. C. Richardson, deceased, was the husband of Iva Mae Richardson and father of Mary Sue Richardson, and said Joe Lynn Richardson, deceased, was the son of the said J. C. and Iva Mae Richardson.

The cause was submitted upon special issues which were answered in favor of appellees and damages assessed and apportioned by the jury in favor of Mrs. Iva Mae Richardson for $7,500 as the pecuniary loss of her husband and $1,500 for the pecuniary loss of her son and $250 burial expenses; and in favor of the minor, Mary Sue Richardson, for $6,000 for the pecuniary loss of her father. Judgment was entered against appellant according to the verdict.

Points 1 and 2 challenge the action of the trial court in refusing to set aside the judgment and grant appellant a new trial, for want of necessary parties plaintiff under the statute. R.S. Articles 4675 and 4677, Vernon's Ann.Civ.St. arts. 4675, 4677. In the motion for new trial appellant raised the question for the first time showing that Mr. and Mrs. P. J. Richardson, father and mother of J. C. Richardson, deceased, were still living and were not parties to the suit and that it had not been brought for their benefit. Appellees contested the motion, and upon a hearing before the court introduced instruments executed and sworn to by Mr. and Mrs. P. J. Richardson in which they each in substance represented, acknowledged and confessed that J. C. Richardson after his marriage to appellee Iva Mae Richardson in January, 1927, to the date of his death had continuously lived with his wife and family and had contributed all of his earnings to their support and maintenance; that he had not in any way contributed to the support and maintenance of his parents and that they had no right to expect that he would have contributed to them in the future; that appellees are entitled to all the damages recoverable on account of the death of J. C. Richardson; that his parents had not joined in this suit because they had sustained no recoverable loss and were entitled to no damages and had no interest in the action on account of the death of their said son; and that any claim, if any they had, they now here released and agreed not to make any demands in the future. Mr. and Mrs. P. J. Richardson each appeared in person and testified on said hearing, confirming the execution of said releases, and facts therein stated, and acknowledged and confessed to the court in their testimony substantially the same facts as above set out.

Article 4675, R.S., provides: "Actions for damage arising from death shall be for the sole and exclusive benefit of and may be brought by the surviving husband, wife, children, and parents of the person whose death has been caused or by either of them for the benefit of all. * * *"

Article 4677, R.S., provides: "The jury may give such damages as they think proportionate to the injury resulting from such death. The amount so recovered shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict."

It is the general rule that each of the beneficiaries named in Article 4675, including the parents of the deceased, must be made parties to the suit, or it must be prosecuted by one or more of such beneficiaries for the benefit of all. East Line & R. R. Railway Co. v. Culberson, 68 Tex. 664, 5 S.W. 820. Such is the rule, in order to meet the provisions of Article 4677, requiring that the damages assessed shall be apportioned by the jury among such of the beneficiaries as are actually entitled to receive same "in such shares as the jury shall find by their verdict." It may be added that as a wholesome result of the rule, a multiplicity of suits against the defendant is avoided. But the rule is not an absolute one. It is equally as well established that where the pleadings and proof show that a beneficiary, not made a party, in fact "has no interest in the suit," that is, where such beneficiary has sustained no loss or has been settled with, the judgment will be allowed to stand. Greathouse v. Ft. Worth & Denver City Ry. Co., Tex.Com.App., 65 S.W.2d 762, 767, and authorities there cited. It is also held that where the question is raised for the first time on motion for a new trial and in opposition thereto, as in the present case, the non-joining beneficiaries appear and show that they sustained no recoverable loss by reason of the death and are entitled to no benefits of the action, the judgment will be allowed to stand. Community Natural Gas Co. v. Lane, Tex.Civ.

App., 133 S.W.2d 200, error dismissed correct judgment, per curiam, 134 Tex. 255, 134 S.W.2d 1058. For in such circumstances it is conclusively established that the verdict has in fact met the requirements of the statute that the damages be apportioned by the jury among all the beneficiaries legally entitled to receive same, and that the defendant is properly protected from subsequent suits of such non-joining beneficiaries.

■ Points 3 and 4 complain of the action of the trial court in refusing to submit appellant's requested special issues 13 and 20, including their subsections, inquiring whether J. C. Richardson failed as he approached the crossing to slacken the speed of the school bus sufficiently to enable him to discover the approach of the train before attempting to cross the tracks, and if so, was such failure negligence, and a proximate cause of the collision and was it the sole cause of the collision? These points are not sustained, because covered by special issues that were submitted to and answered by the jury. In special issue 23 of the court's main charge, inquiry was made as to whether J. C. Richardson as he approached the crossing failed to keep a proper lookout, to which the jury answered "No"; special issue 27 inquired as to whether J. C. Richardson failed to bring the bus to a dead stop before crossing or attempting to cross the tracks, to which the jury answered "No"; appellant's requested special issue 4, given and submitted, inquired as to whether J. C. Richardson as he approached the crossing failed "to look and listen for a train that might be approaching such crossing from a place where danger could be discerned and precaution taken to avert danger", to which the jury answered "No"; appellant's requested special issue 5, given and submitted, inquired as to whether J. C. Richardson as he approached the crossing failed "to stop the school bus he was operating at a place from which a train approaching said crossing from the direction that the train in question was approaching the crossing in question could be discovered and look for a train that might be approaching said crossing on said occasion from said direction", to which the jury answered "No"; appellant's requested special issue 8, given and submitted, inquired as to whether J. C. Richardson "attempted to pass over the crossing in question without first ascertaining that same could be done in safety", to which the jury answered "No". It is not error to refuse a requested special issue where the same matter has been substantially and sufficiently covered by issues that were submitted. 41 T.J. 1051, Sec. 246.

■ Points 5, 6, 7 and 8 raise the contention that the negative answers of the jury to special issue 27 in the court's main charge, as stated above, and to appellant's requested special issue 5, given and submitted, as stated above, are contrary to the undisputed evidence, and are against the overwhelming weight of the evidence. The record fails to sustain the contention. There is no presumption that deceased was guilty of such alleged acts of contributory negligence. The burden of proof was on appellant to affirmatively show that deceased failed to properly stop the bus and look for an approaching train; and in order to warrant setting aside the negative answers of the jury, the evidence must be so conclusive as that the minds of reasonable men might not fairly differ as to a conclusion requiring affirmative answers. Appellant's witness Emby Hays, fireman on the train, was the only living eyewitness to the collision. He testified that the train was about 525 feet from the crossing when he first saw the school bus; that at that time the bus was on the east edge of the bridge approaching the crossing (the east edge of the bridge is about 35 feet from the east rail of the crossing); that the bus was "just moving along slowly." "Q. From the time you first saw that school bus until it drove on the crossing, did it come to a dead stop anywhere there before it got to the track? A. No, sir, I couldn't tell if it did." This testimony is merely negative in nature, being to the effect that if the bus stopped after witness first saw it, witness did not see it stopped or was not sure of the fact. On the other hand, the attending physical facts would warrant the inference that deceased may have stopped the bus either immediately before being first seen by Hays or at some time not observed by him, in that, the testimony shows that the crossing had remained in very bad repair for a long time, there being no plank or gravel above the ties between or on either side of the rails, extending above the public roadbed, and that it was necessary to stop and shift into low gear and drive at slow speed in approaching the crossing in order to drive an

automobile over it; that deceased passed over the crossing daily and must have known such facts.

■ Point 9 raises the contention that the trial court should have set aside the verdict of the jury and granted a new trial, because, in the course of his closing argument and while discussing special issue 20, which inquired as to what sum of money if paid now in cash would fairly and reasonably compensate the minor plaintiff, Mary Sue. Richardson, for the pecuniary loss .sustained by her on account of the death of her father, counsel for appellees asked the jury: "What would you charge today just to blot out the privilege you have of counseling and advising with your girls, and your children?" Appellant objected to the question at the time it was asked, whereupon the court sustained the objection and instructed the jury to disregard it. The question may reasonably be construed as intending indirectly or by inference to call upon the jury to do unto the plaintiff Mary Sue Richardson in assessing the damages to be awarded her, as they would have a jury do unto their daughter in the same or similar circumstances—an implied appeal to apply the Golden Rule. But it is not thought that the question was so inflammatory in character as calculated to cause the jury to reject the court's instructions not to consider it, and in disregard of their oaths to answer the question through influence of prejudice. Safety Casualty Co. v. Daisy Wright, Tex.Sup., 160 S.W.2d 238. That the jury did not do so, we think, is affirmatively reflected by the record. The jury awarded said minor $6,000. The amount is fully sustained by undisputed testimony, and no contention is made that it is excessive. "Not every argument containing the bare suggestion to the jurors to consider the case. from the standpoint of one of the parties, or as they would have their own cases considered, is ground for reversal." Texas & N. O. Ry. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160, 164; Rio Grande & E. P. & S. F. Ry. Co. v. Dupree, Tex.Com.App., 55 S.W. 2d 522; 3 T.J. 1260, Sec. 883.

■■ Point 10 raises the contention that the judgment should be reversed because the trial court erred in overruling appellant's objections and exceptions to the court's definition of the term "unavoidable accident." The term was defined. by the court as. follows: "In connection with the foregoing Special Issue No. 30, you are instructed that by the term 'unavoidable accident', as herein used, is meant an event which occurs without having been proximately caused by the negligence of J. C. Richardson, deceased, or of the defendant St. Louis Southwestern Railway Co. of Texas." Appellant's objections and exceptions to the definition read as follows.: "Defendant objects and excepts to the Court's definition of the term 'unavoidable accident' because said definition is legally incorrect in that it does not inform the jury that 'unavoidable accident' as used in Special Issue No. 30 means an event which occurs without having been proximately caused by either the negligence of J. C. Richardson, deceased, or the. negligence of this defendant." The point here raised is that the trial court used the words: "Defendant, St. Louis Southwestern Railway Company of Texas" when he should have used the words: "Defendant, Berryman Henwood, Trustee, St. Louis Southwestern Railway Company of Texas, Debtor." We do not think that the ground of objection was sufficiently pointed out to the trial court in a manner calculated to appraise the court of the particular point intended to be made. Ford Motor Co. v. Maddin, 124 Tex. 131, 76 S.W.2d 474; San Antonio Public Service Co. v. Murray, 127 Tex. 77, 90 S.W.2d 830. The record further shows that defendant was referred to by the witnesses in their testimony before the jury as St. Louis Southwestern Railway Company, or Cotton Belt Railroad. Berryman Henwood, Trustee, does not appear to have been mentioned in the testimony. We do not think that the jury could have been misled in the real meaning of the definition by the use of the words "Defendant, St. Louis Southwestern Railway Company of Texas," instead of the words "Defendant, Berryman Henwood, Trustee, St. Louis Southwestern Railway Company of Texas, Debtor", or the words "This Defendant."

The judgment of the trial court will be affirmed.

. HALL, Justice.

I concur in the disposition made of appellant's point 10, because, in my opinion, the issue of unavoidable accident was not raised in the testimony.