**BROWNING–FERRIS, INC., Appellant,**

v.

**Larry D. HOBSON, Appellee.**

**No. 14–97–00250–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 30, 1998.

---

Cliff Harrison, Houston, for Appellant.

Carl Crow, Kevin Dubose, Houston, for Appellee.

Before YATES, AMIDEI and FOWLER, JJ.

## OPINION

AMIDEI, Justice.

Browning–Ferris, Inc., (BFI) appeals from a judgment upon a jury verdict in favor of appellee, Larry D. Hobson (Hobson) for money damages. Hobson sued BFI for money damages as a result of injuries he sustained to his shoulder when he threw a bag of trash into the top of BFI's dumpster. In five points of error, BFI contends there is no evidence that BFI's negligence was a proximate cause of the occurrence or of Hobson's injuries and the trial court erred in: (1) and (2), submitting questions on BFI's negligence and proximate cause to the jury; (3) rendering judgment on the jury's verdict; and (4) and (5), denying BFI's motions for judgment notwithstanding the verdict (JNOV). In point of error six, appellant contends the evidence is factually insufficient to support the judgment of the trial court upon the jury's verdict. We affirm.

## I. BACKGROUND.

On September 22, 1992, Hobson injured his shoulder while throwing a bag of trash into the top of an 80–inch tall, eight-yard BFI dumpster. Hobson was working as a maintenance man for the Farmington Apartments and was required to empty trash into three dumpsters on a regular basis. Hobson alleged that BFI was negligent in: (1) damaging the side-loading door of the dumpster so that it would not open, (2) failing to inspect the sideloading door to determine its damaged condition, and (3) failing to respond to two calls notifying BFI of the damage, and either repair or replace the damaged dumpster. As a result of BFI's negligence, Hobson alleged he could not use the side-loading dumpster door and was forced to load trash by lifting heavy trash bags over his head, and throw them in the top part of the dumpster that was 80 inches from the ground. Hobson alleged that the extra strain of lifting the trash bags over his head resulted in a permanent shoulder injury. In question one, the jury found the negligence of BFI and Hobson proximately caused the occurrence and Hobson's injury. In question two, the jury allocated 90% of the comparative responsibility to BFI, and 10% to Hobson. The jury awarded Hobson $350,000.00 for physical pain, mental anguish, loss of earning capacity, physical impairment, and medical care.

## II. CAUSATION.

BFI argues its first five points of error together contending there is no evidence that BFI's negligence proximately caused Hobson's injuries.

A. Standard of Review—No evidence. When we review a no evidence claim, we consider only the evidence and inferences tending to support the jury's fact finding. *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). We disregard all contrary evidence and inferences. *Id.* If there is any evidence of probative force to support the finding, we overrule the point of error and uphold the jury's finding. *Id.* If there is more than a scintilla of probative evidence in the record to support the finding, a no evidence challenge fails. *Id.*

1. Proximate Cause—Cause in Fact.

■ a. Applicable Law. The components of proximate cause are "cause in fact" and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477

(Tex.1995); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). The test for cause in fact is whether the negligent "act or omission was a substantial factor in bringing about the injury" without which the harm would not have occurred. *Doe*, 907 S.W.2d at 477. Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *Doe*, 907 S.W.2d at 477; *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995). The question of proximate cause is one of fact that is particularly within the province of the jury, and a jury finding on proximate cause will be set aside only in the most exceptional circumstances. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 756 (Tex. 1975); *Yap v. ANR Freight Sys., Inc.*, 789 S.W.2d 424, 425–26 (Tex.App.—Houston [1 st Dist.] 1990, no writ).

■ b. Application of Law to the Facts. In its supplemental motion for JNOV, BFI contended there was no evidence to support the jury's finding of proximate cause in light of the recent supreme court decision in *Leitch*, 935 S.W.2d at 118–120. In its brief, BFI argues Hobson did not present any evidence to show his injury would not have happened if the side door had been operable, citing *Leitch* as analogous to this case. In *Leitch*, the plaintiff, Hornsby, alleged that he injured his back while lifting a cable reel. *Id.* at 118. Hornsby contended he would not have been injured if he had been furnished a lift belt or other equipment to lift the cable reel out of his truck. *Id.* Hornsby's physician testified that Hornsby's injuries were caused by lifting the cable reel. However, in response to a question about whether Hornsby's injury could have been prevented by the use of a lift belt, Hornsby's physician testified he could not say that providing a lift belt would have prevented the injuries. *Id.* at 119. The supreme court found that the doctor's testimony was no evidence of causation and no probative evidence existed that Hornsby's injury was proximately caused by the breach of duty to provide him with proper lifting equipment. *Id.*

The supreme court further found that the opinion of Hornsby's co-worker, Larry Whidden, that the use of a lift belt would have eliminated Hornsby's injuries was no evidence of causation. *Id.* at 119. The *Leitch* court found that Whidden was not qualified to testify about whether lifting equipment would have prevented ·Hornsby's injuries. *Id.* The supreme court held, in pertinent part:

> Whidden's testimony has no probative worth and is not proper evidence of causation because his testimony amounts to mere conjecture, and because he was not qualified to testify about what type of lifting devices might have prevented Hornsby's injuries. [Citations omitted]. Therefore, there is no evidence to support the jury's verdict.

*Id.* at 119.

Appellant argues there was no medical testimony in this case to connect Hobson's injuries to the damaged side-door. Appellant cites testimony from Dr. Robert Koshman, Hobson's primary physician, in support of his argument that there was no medical testimony linking the injury to the side door. During cross-examination by appellant's counsel, the following testimony was elicited:

> [APPELLANT'S COUNSEL]: Now, can you get an impingement syndrome by tossing underhand a bag of garbage into a dumpster one time?
>
> [DR. KOSHMAN]: I don't know.

Later in the cross-examination, the following was elicited:

> [APPELLANT'S COUNSEL]: Are you able to tell us if a motion whereby *somebody* was to swing a garbage bag a very full circle and release it high up overhead would be more or less likely to cause or contribute to an impingement syndrome than a similar motion, say,· half way up (emphasis added)?
>
> [DR. KOSHMAN]: No.

The questions and answers did not specifically address Hobson's injury, were not based upon reasonable medical probability, and are no evidence of proximate cause of his injury because they relied on mere possibility, speculation, and surmise. *See Schaefer v. Tex. Emp. Ins. Ass'n*, 612 S.W.2d 199, 204 (Tex.1980). Furthermore, when reviewing a no evidence complaint, we may consider only

the evidence supporting the finding and disregard evidence and inferences to the contrary. *Leitch*, 935 S.W.2d at 118. *See also Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 275–76 (Tex.1995).

After being cross-examined by appellant's counsel, the following testimony was elicited by Hobson's counsel from Dr. Koshman on redirect examination:

[HOBSON'S COUNSEL]: Now, Dr. Koshman, have work-related activities been known to cause what's called impingement, as we've been talking about in Larry Hobson's case?

[DR. KOSHMAN]: Yes.

Q: Can you tell us if lifting heavy objects or lifting heavy objects over your head has been known to cause impingement in human beings?

A: Yes.

Q: Have repetitive traumatic activities like having to throw heavy garbage bags up over the top of your head into the dumpster been known to cause impingement?

A: Yes.

Q: Is it more likely in your view that such activities would cause an impingement based on reasonable medical probability, than simply having to lift a garbage bag up to waist height?

A: It's my—It's my opinion that it would be.

In *Leitch*, Hornsby's physician was asked a question about whether Hornsby's injury could have been prevented by the use of a lift belt, and the doctor answered: "I would be unable to comment. I don't think there is anything that would be available to say yes or no in that respect." The *Leitch* court found this testimony was no evidence of causation. In this case, Dr. Koshman's testimony that Hobson's injury was more likely caused by throwing a garbage bag over his head than by lifting it waist high is some evidence that the injury could have been prevented by use of the side door on the dumpster. Because there is more than a scintilla of probative evidence in the record to support the jury finding, appellant's no evidence challenge fails. *Leitch*, 935 S.W.2d

at 118. We overrule appellant's no evidence claim on cause in fact.

■ 2. Proximate Cause—"legal cause." Appellant cites *Union Pump Co. v. Allbritton*, 898 S.W.2d 773 (Tex.1995) as authority for its contention that there is no evidence of proximate cause of the occurrence or Hobson's injuries because BFI's conduct was not a substantial factor in bringing about his injuries. *Id.* at 775. Appellant argues BFI's negligence was too remotely connected with Hobson's injury to constitute legal causation. *Union Pump Co.* involved a defective pump that caused a fire; the fire department put the fire out, which in turn caused a pipe rack to become wet and slippery with water and foam. *Id.* at 774. After the fire was put out, the plaintiff walked across the wet pipe rack, slipped, and was injured. *Id.* The plaintiff alleged that but for the pump fire, she would never have walked over the pipe rack, which was wet with water or firefighting foam. *Id.* The supreme court held:

> Even if the pump fire were in some sense a "philosophic" or "but for" cause of Allbritton's injuries, the forces generated by the fire had come to rest when she fell off the pipe rack. The fire had been extinguished, and Allbritton was walking away from the scene. Viewing the evidence in the light most favorable to Allbritton, the pump fire did no more than create the condition that made Allbritton's injuries possible. We conclude that the circumstances surrounding her injuries are too remotely connected with Union Pump's conduct or pump to constitute a legal cause of her injuries.

*Id.* at 776.

In this case, the side door had never been repaired or replaced and the "forces that generated" Hobson's injuries had *not* come to rest. We conclude the circumstances surrounding Hobson's injuries were not too remotely connected with BFI's conduct and did constitute a legal cause of his injuries. We overrule appellant's contention with respect to no evidence of any legal cause.

■ 3. Proximate Cause—Foreseeability. Appellant argues it had no notice of any previous accidents involving cases such as

Hobson's and they could not foresee that the accident and resulting personal injury suffered by Hobson were the natural and probable consequence of BFI's failure to repair or replace the damaged door. (Citing *McClary v. Jones*, 404 S.W.2d 314 (Tex.1966)).

Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission. *Doe*, 907 S.W.2d at 478; *Travis*, 830 S.W.2d at 98. The particular accident need not be foreseen, but the injury must be of such a general character as might reasonably have been anticipated. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 551 (Tex.1985). BFI contends they never knew anyone to claim they were injured by throwing trash into a dumpster and, thus, there was no evidence that BFI had any reason to anticipate Hobson's injuries. We disagree.

Foreseeability does not require that parties anticipate the precise manner in which injury will occur once they have created a dangerous situation through their negligence. *Travis*, 830 S.W.2d at 98. Two corporate representatives for BFI testified that the purpose of the side door was to save "wear and tear" on the arms, shoulders, and back. The BFI representatives testified that they were very safety conscious and tried to immediately repair or replace dumpsters with damaged side doors. Mr. William Martin, BFI's safety manager, testified that BFI drivers are supposed to report damaged dumpsters. The jury had evidence that the dumpster door was damaged, that the damage was reported to BFI, BFI admitted the side doors were to prevent "wear and tear" on arms and shoulders, and that Hobson injured his shoulder throwing trash in the top of the dumpster instead of through the inoperable side door. Therefore, the jury could find the injury was of such a general character that BFI could have reasonably anticipated Hobson's injury. *Nixon*, 690 S.W.2d at 551. Considering the evidence and inferences supporting the finding, and disregarding evidence and inferences to the contrary, we overrule appellant's no evidence challenge on proximate cause for lack of foreseeability. We overrule appellant's points of error one, two, three, four, and five.

**B. Factual insufficiency.** In its sixth point of error, appellant asserts the evidence is factually insufficient to support the jury's finding that BFI's negligence proximately caused Hobson's injuries. When reviewing a fact finding to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if the evidence is so weak as to make the finding clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d, 175, 176 (Tex.1986); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Having examined all the evidence, and in light of our discussion above under the no evidence challenge, we conclude the evidence supporting the jury's findings that BFI's negligence proximately caused Hobson's injuries and damages is not so weak as to make the finding clearly wrong and unjust. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *International Piping v. M.M. White*, 831 S.W.2d 444, 449–450 (Tex. App.—Houston [14th Dist.] 1992, writ denied). The jury was entitled to believe that Hobson injured his shoulder while throwing a bag of trash over the top of the damaged dumpster, that BFI was negligent in not repairing or replacing the damaged dumpster after being notified twice of the damaged door, that the failure to repair or replace the door proximately caused Hobson's injuries. A court of appeals may not substitute its opinion for that of the trier of fact merely because it might have reached a different fact conclusion. *Id.* at 450. We overrule appellant's point of error six and affirm the judgment of the trial court.

FOWLER, Justice, concurring.

I concur in the court's opinion and write separately to emphasize the evidence in the trial court supporting cause in fact. The majority opinion cited some of the testimony supporting cause in fact but there is more testimony I think should be highlighted. In addition to giving his opinion that lifting a garbage bag over one's head would more likely cause impingement, Hobson's doctor also testified that Hobson's injuries were the

direct result of a specific event—having to throw the garbage bags over his head.

Q. And Larry Hobson's injury, Doctor, assuming the facts ... the jury ... will hear ... [are] that he injured his right shoulder while employed as a maintenance worker. He was swinging a bag into a dumpster at the moment that he felt a sharp pain, and that he felt like his shoulder popped out of place and following that, it settled down to his side and month later he presented himself to you with this history and his symptoms, would you have an opinion, Dr. Koshman, as to whether or not his impingement was a result of a hooked acromion or the result of the single traumatic event as related to you?

A. Yes.

Q. What would be your opinion?

A. It would be directly related to that.

* * *

Q. Are people who present themselves with an impingement often—do they—is it common or uncommon for them to have a history of a traumatic event, or at least an isolated event causing the onset of the pain?

A. As I indicated previously, that at times there is and at times people have insidious onset or gradual onset of we term impingement syndrome. I can't give you any statistical statistics regarding that.

Q. In Larry's case which was it?

A. That it was an acute episode. Acute onset, rather.

* * *

Q. In reasonable medical probability, do you think that Mr. Larry Hobson's impingement is the result of a normal aging process or a result of this acute event which he related to you in his history to you?

A. My opinion is that it's an acute event that occurs.

The jury also had testimony before it that this was the first time Hobson had had to lift a garbage bag over his head to load it into a BFI container. Thus, this testimony, along with the testimony cited in the majority opinion, and the testimony just recited, gave the jury some evidence to conclude that Hobson was injured because he had to lift a garbage bag over his head and that the injury was not caused by normal wear and tear but by the single traumatic event of having to throw the garbage over his head.

Unlike the testimony in *Leitch* that the majority opinion refers to, this testimony directly linked the injury (impingement syndrome) to the alleged negligent conduct (failing to repair a non-functioning side-loading door BFI knew was broken). As counsel for Hornsby argued before this court, the jury was faced with an injury that manifested itself suddenly after a particular event. In light of this fact along with the medical testimony, the jury was entitled to conclude as it did.

For these additional reasons, I concur in the opinion of the court holding that sufficient evidence existed to support the jury's findings on proximate cause.