PROVIDENCE HEALTH CENTER a/k/a Daughters of Charity Health Services of Waco; and DePaul Center a/k/a Daughters of Charity Health Services of Waco, Appellants,

v.

Jimmy and Carolyn DOWELL, Individually and on behalf of the Estate of Jonathan Lance Dowell, Deceased, Appellees.

No. 10–02–00026–CV.

Court of Appeals of Texas, Waco.

March 30, 2005.

Greg White, Naman Howell Smith & Lee, LLP, Andy McSwain, Fulbright Winniford Bice & Marable, Waco, for appellants.

Jim Dunnam, Dunnam & Dunnam, LLP, Waco, Sharon L. Cullen, The Mediation Firm, Houston, Vincent Lee Marable, III, Wharton, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

This is an appeal from an adverse judgment in a medical malpractice case. Finding no error, we affirm the judgment.

## THE EVENTS

Early on a Saturday, twenty-one-year-old Lance Dowell was taken by Freestone County Sheriff's Deputies to Providence Health Center in Waco (Providence) because he had self-inflicted wounds and was talking about committing suicide. He was seen at the emergency room by Dr. James C. Pettit, who requested a psychological assessment from the DePaul Center (De-Paul), which is affiliated with Providence. Sister Mary Theresa Fox, a joint employee of Providence and DePaul, evaluated Lance's condition and determined that he was not "actively suicidal." Dr. Pettit reached the same conclusion. Lance was discharged from the hospital, accompanied by his mother, Carolyn Dowell (Carolyn).

During that same day, Lance went to his mother's home in Waco and bathed, went to Lake Limestone, went to Fairfield with his brother Larry to a rodeo, and visited with friends. On Sunday he and Larry attended a family reunion and made plans to meet at a party that night. On Sunday evening, Lance hung himself.

## THE SUIT

Lance's parents, Carolyn and Jimmy Dowell (hereinafter collectively referred to as "the Dowells") sued Providence, De-Paul, and Dr. Pettit under the Texas Wrongful Death Act and the Survival Statute, asserting a claim of medical negligence and a claim under the federal "anti-dumping" statute. A jury found that Lance suffered personal harm as a direct result of the failure to provide an appropriate psychiatric screening evaluation. After finding that the negligence of all three defendants proximately caused the injury in question, the jury apportioned the negligence 20% to Dr. Pettit, 40% to Providence, and 40% to DePaul. Damages were assessed as follows: $100,000 each to the Dowells for past mental anguish and loss of society and companionship; $100,000 each for the same elements in the future; and $400,000 for pain, mental anguish, and funeral and burial expenses as compensation for Lance. The court entered a judgment accordingly.

Dr. Pettit filed a notice of appeal, which we docketed under cause number 10–01–420–CV. Providence and DePaul also filed a notice of appeal, which we docketed under cause number 10–02–026–CV. The causes were argued and submitted on the same day, and the opinions were issued together. We then learned from Dr. Pettit's counsel that he had filed a Chapter 7 bankruptcy proceeding prior to the issuance of our opinions. Because it was void, we withdrew our opinion and judgment in Dr. Pettit's appeal, and, because our two cases resulted from a single trial court judgment, we also withdrew our opinion and judgment in this cause. The Dowells obtained a release from the bankruptcy stay, which allowed us to reinstate Dr. Pettit's appeal. However, after reinstatement, we were notified that Dr. Pettit had

filed a new bankruptcy proceeding under Chapter 13.

■ Providence and DePaul are not entitled to benefit from a bankruptcy filing by Dr. Pettit. *See Pustejovsky v. Rapid–American Corp.* 35 S.W.3d 643, 645 n. 2 (Tex.2000); *Lisanti v. Dixon,* 147 S.W.3d 638, 641 (Tex.App.-Dallas 2004, no pet.); *see also In re Southwestern Bell Tel. Co.,* 6 S.W.3d 753, 755 (Tex.App.-Corpus Christi 1999, orig. proceeding). The trial court's judgment allocates the liability of all defendants and meets the criteria for a severance. Accordingly, we sever the Dowells' claims against Providence and DePaul from those against Dr. Pettit and proceed with the decision in this appeal.[1] TEX.R.APP. P. 8.3(b).

## ISSUES IN THIS APPEAL

Providence and DePaul (hereafter collectively called Providence) assert in five issues: (1) the evidence does not show a sufficient causal connection to hold either of them liable for Lance's suicide; (2) the court erred in failing to ask the jury whether the Dowells' negligence in failing to follow the instructions that were given when Lance left the hospital was a proximate cause of his death; (3) because the evidence shows that Lance had a child, the court erred in failing to require the Dowells to join that child as a party; (4) because no personal representative of Lance's estate had been appointed, the Dowells had no standing to bring a claim under the survival statute; and (5) no evidence exists to support an award of damages for pain and mental anguish to Lance's estate.

We will address the issues in this same order.

## STANDARD OF REVIEW

We begin by considering the traditional no-evidence review standards, then add the requirements peculiar to medical negligence cases. We note at this point, however, that Providence relies on other pronouncements by the Texas Supreme Court in connection with its attack on causation. We will discuss those decisions in due course.

### TRADITIONAL REVIEW STANDARDS

■ We review no-evidence points by considering only the evidence and all reasonable inferences that support the jury's finding while disregarding all evidence and inferences to the contrary. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge must fail. *Id.* If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 182 (Tex.1995). Generally, if the court of appeals sustains a "no evidence" point, it is the court's duty to render judgment for appellant. *Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176, 176 (Tex.1986) (quoting *Nat'l Life Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969)).

■ A no-evidence point must and can only be sustained when the record reveals: (1) a complete absence of evidence of a vital fact; (2) rules of law or rules of evidence bar the appellate court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; and (4) the evidence conclu-

---

1. As a result of this severance, the appeal with respect to Dr. Pettit, No. 10–01–00420–CV in this court, remains abated pending the resolu-

tion of the bankruptcy proceeding. *Vaughn v. Ford Motor Co.,* 91 S.W.3d 387, 388 n. 1 (Tex.App.-Eastland 2002, pet. denied).

sively establishes the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990) (citing Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L.REV. 361, 362–63 (1960)).

█ When we review an "insufficient-evidence" point challenging the factual sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, we may set aside the finding only if a review of all the evidence, both for and against the finding, demonstrates that the finding is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex.App.-Waco 2000, pet. denied). Reversal could occur because the finding was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. *Checker Bag*, 27 S.W.3d at 633 (citing William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX. L.REV. 515, 519 n. 11 (1991)).

#### MEDICAL–NEGLIGENCE REQUIREMENT

█ In a medical-negligence case, the plaintiff is required to show evidence of a "reasonable medical probability" that the injury was proximately caused by the negligence of the defendant. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex.1995); *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex.1988). There are four elements to be proved: (1) a duty by the physician/nurse/hospital to act according to applicable standards of care; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection be-tween the breach of care and the injury.[2] *Cruz v. Paso Del Norte Health Found.*, 44 S.W.3d 622, 629–30 (Tex.App.-El Paso 2001, pet. denied).

### WAS PROVIDENCE'S NEGLIGENCE A CAUSE?

█ Providence's first issue attacks the finding of causation, asserting that the evidence does not support a conclusion that any negligence on their part was a "cause in fact" of Lance's suicide. They say the connection between these defendants and Lance's suicide is "simply too attenuated to constitute legal cause."

█ The components of proximate cause are cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). These elements cannot be established by mere conjecture or guess, but must be proven by evidence of probative force. *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex.1980); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975); *see also Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex.1970) (proof must be "beyond the point of conjecture"); *Blankenship v. Mirick*, 984 S.W.2d 771, 775 (Tex.App.-Waco 1999, pet. denied).

█ "Cause in fact" means the act or omission was a substantial factor in bringing about the injury and, without it, harm would not have occurred. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex.2001). "Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers her negligent act created for others. *Id.* at 785. Foreseeability does not require that the person who creates the dangerous situation anticipate the precise

---

**2.** Only the fourth element is at issue in this appeal. Providence does not attack the find-ing that Sister Mary Theresa Fox failed to use ordinary care or that an injury occurred.

manner in which the injury will occur; instead, the injury need only be of a general character that the actor might reasonably anticipate. *Id.*

The jury answered affirmatively the broad-form question whether Providence's negligence proximately caused the injury in question. The charge instructed the jury as to the meaning of proximate cause. Providence does not attack the charge or the finding, as such. Rather, it says that two opinions of the Texas Supreme Court that address the element of proximate cause, both discussing Section 431 of the RESTATEMENT (SECOND) OF TORTS, justify a finding of no proximate cause as a matter of law.

The Dowells introduced expert testimony on the issue of causation, which was not objected to by Providence and is not attacked on appeal. We measure sufficiency of the evidence by the court's actual charge, not some other unidentified law, when the opposing party fails to object to the charge. *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000). On the basis of the expert's testimony alone, we can determine that the record contains "some evidence" to support the jury's finding of causation. *Orozco,* 824 S.W.2d at 556. Furthermore, we cannot say a review of the evidence supporting and opposed to the finding of causation, measured against the definition of proximate cause given to the jury, demonstrates that the finding is clearly wrong and unjust. *Cain,* 709 S.W.2d at 176; *Checker Bag,* 27 S.W.3d at 633. With that review under traditional standards in mind, we turn to an evaluation of Providence's "attenuation" claim.

In *Lear Siegler, Inc. v. Perez,* Perez was pulling a mobile traffic-control sign manufactured by Lear Siegler, which had malfunctioned at an earlier time. After Perez stopped on the traveled part of the roadway and positioned himself near the sign, he was struck by a vehicle driven by Lerma. Perez later died from the injuries. The Court concluded that the circumstances of Perez's injuries were too remotely connected with Lear Siegler's negligence or product defect to constitute legal cause. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex.1991). After discussing Section 431, the court stated:

> We recognize there may be cases in which a product defect or a defendant's negligence exposes another to an increased risk of harm by placing him in a particular place at a given time. Nonetheless, there are certain situations in which the happenstance of place and time **is too attenuated** from the defendant's conduct for liability to be imposed.

*Id.* (Emphasis added). In affirming the trial court's grant of a summary judgment for Lear Siegler, the court noted, "[i]t is undisputed that Lerma was asleep, and proper operation of the flashing arrow sign would have had no effect on his conduct." *Id.*

In *Union Pump Co. v. Allbritton,* a firefighter was injured when she hopped or slipped off a pipe rack at a chemical plant, after helping successfully extinguish a fire caused by a defective pump manufactured by Union Pump. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 774 (Tex.1995). She asserted that the fire and her injuries would never have occurred "but for" the defective pump. *Id.* After the trial court's summary judgment for the defendant was reversed by the court of appeals, the Supreme Court noted that the question was whether Union Pump established that neither its conduct nor its product was a legal cause of Allbritton's injuries. *Id.* at 775. "Stated another way, was Union Pump correct in contending that there was no causative link between the defective pump and Allbritton's

injuries as a matter of law?" *Id.* The Court noted that cause in fact is an element of both proximate cause and producing cause, "including the requirement that the defendant's conduct or product be a substantial factor in bringing about the plaintiff's injuries." *Id.* The Court then said, "[a]t some point in the causal chain, the defendant's conduct or product may be **too remotely connected** with the plaintiff's injury to constitute legal causation." *Id.* (emphasis added) (citing *City of Gladewater v. Pike,* 727 S.W.2d 514, 518 (Tex.1987)). Discussing *Lear Siegler,* the Court said, "[a]s this Court explained in *Lear Siegler,* the connection between the defendant and the plaintiff's injuries simply may be **too attenuated** to constitute legal cause. 819 S.W.2d at 472. Legal cause is not established if the defendant's conduct or product does no more than furnish the condition that makes the plaintiff's injury possible." *Id.* at 776 (emphasis added). The opinion also cites *Bell v. Campbell,* a two-collision case involving "intervening causes," as opposed to "concurring causes," where the Court observed that "all forces involved in or generated by the first collision had come to rest" before the second collision in which the plaintiffs sustained injuries. *Id.* (citing *Bell v. Campbell,* 434 S.W.2d 117, 122 (Tex.1968)).

A third case, recently decided, involves the same question. *IHS Cedars Treatment Ctr. v. Mason,* 143 S.W.3d 794 (Tex. 2004). In *Mason,* the plaintiff was injured while riding as a passenger in a single-car accident. *Id.* at 796. Both she and the driver, Thomas, had been released from a mental health care facility some twenty-eight hours earlier. *Id.* She sued her doctor, the driver's doctor, a nurse, and the health care facility. The trial court granted summary judgment, finding no proximate cause; the court of appeals reversed and remanded for a trial. *Id.* at 797–98.

The Texas Supreme Court noted that Mason did not argue that the defendants "caused Thomas to experience a psychotic episode, drive wildly, or crash the Corvette." *Id.* at 801. Thus, by releasing her, they "merely created the condition" in which the accident occurred. *Id.* at 799.

*Lear Siegler, Union Pump,* and *Mason* discuss the concept now asserted by Providence in terms of "attenuation" of causation. That is to say, at some point in the chain of events, the defendant's negligence and later events are simply too remotely connected for those events to be said to have been "caused" by that negligence. Providence says this is just such a case and that we should make that determination as a matter of law. We do not agree.

 Providence points to the "substantial factor" discussions in *Lear Siegler, Union Pump,* and the Restatement. *Union Pump,* 898 S.W.2d at 776; *Lear Siegler,* 819 S.W.2d at 471–72; RESTATEMENT (SECOND) OF TORTS § 431 cmt. a (1965). But, "substantial factor" has long been an element of proximate cause in Texas. *Union Pump* cites *City of Gladewater v. Pike,* which recites the "substantial factor" definition. *City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex.1987). *Pike,* in turn, cites *McClure v. Allied Stores of Texas, Inc.* for the same definition, and *McClure* cites *Texas & Pacific Railway Co. v. McCleery,* which states, "Negligent conduct is, in law, a cause in fact of harm to another only if it is a substantial factor in bringing about the harm." *McClure v. Allied Stores of Tex., Inc.,* 608 S.W.2d 901, 903 (Tex.1980); *Texas & Pac. Ry. Co. v. McCleery,* 418 S.W.2d 494, 497 (Tex.1967). *McCleery* cites *Hopson v. Gulf Oil Corp.,* a 1951 decision by the Supreme Court, stating: "Two elements or tests of proximate cause are causation and the limitation to foreseeable consequences. As to causa-

tion, it is said that if the defendant's act or omission was a substantial factor in bringing about the result, it will be regarded as a cause, and that ordinarily it will be such a substantial factor if the result would not have occurred without it." *Hopson v. Gulf Oil Corp.*, 150 Tex. 1, 237 S.W.2d 352, 355 (1951). Thus, for at least fifty years, "substantial factor" has been a part of the test for determining proximate cause. Furthermore, the Court has observed that the issue of whether a particular act of negligence is a cause in fact of an injury is a particularly apt question for jury determination. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 756 (Tex.1975) (citing Prosser, Law of Torts § 41 at 237 (4th ed.1971)). "The question of proximate cause is one of fact particularly within the province of a jury, and a jury finding on proximate cause will be set aside only in the most exceptional circumstances." *Texas Dept. of Transp. v. Olson*, 980 S.W.2d 890, 893 (Tex.App.-Fort Worth 1998, no pet.); *see also Browning–Ferris, Inc. v. Hobson*, 967 S.W.2d 543, 546 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *Rodriguez v. Moerbe*, 963 S.W.2d 808, 818 (Tex.App.-San Antonio 1998, pet. denied); *Potter v. Anthony Crane Rental of Tex., Inc.*, 896 S.W.2d 845, 850 (Tex.App.-Beaumont 1995, writ denied).

We note that this is a case involving a claim of negligent "omission," *i.e.*, the failure by Providence to provide an "appropriate psychiatric screening," rather than a negligent "act" or a product defect. The question we confront is "does the evidence conclusively show that Providence's medically-negligent omission, as found by the jury, ceased to be a cause in fact of Lance's suicide because of the passage of time or other factors?" If so, the trial court should have granted Providence's motion to disregard jury findings or motion for judgment notwithstanding the verdict.

*Lear Siegler, Union Pump,* and *Mason* were summary judgment proceedings where the trial court had granted a motion that established lack of causation as a matter of law. *Mason*, 143 S.W.3d at 797–98; *Union Pump*, 898 S.W.2d at 774; *Lear Siegler*, 819 S.W.2d at 472. The Court, of necessity, treated the issue as a question of law in that context. We read the opinions as the Supreme Court saying that a court may, as a question of law, weigh competing policy considerations and define the limits of legal causation by "fixing the line between immediate results and remote results" of wrongful acts.[3] *Union Pump*, 898 S.W.2d at 775 (quoting *Springall v. Fredericksburg Hosp. and Clinic*, 225 S.W.2d 232, 235 (Tex.Civ.App.San Antonio 1949, no writ)).

Providence points to these facts: (1) Lance appeared to be perfectly normal when he was discharged, (2) no one knows precisely why he killed himself, (3) thirty-six hours passed between his discharge and the suicide, (4) it is just as likely that a new and unknown event triggered his suicide, (5) a proper exam could not have guaranteed hospitalization—because Lance might not have consented to stay, and (6) hospitalization would not have guaranteed that treatment would have prevented the suicide. None of these factors, nor all of them together, conclusively prove that the negligence attributable to Providence was too remotely connected to Lance's suicide to constitute legal causation. Thus, we

---

**3.** We also note Justice Cornyn's lengthy concurring opinion, in which he disagrees with the Court's cause-in-fact analysis and concludes that such questions would be better analyzed under the foreseeability element of proximate cause and the "damages occurring in a natural and continuous sequence" inquiry under producing cause. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 777–86 (Tex. 1995) (Cornyn, J. concurring).

believe that the fact issue as to causation was properly submitted to and decided by the jury. *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 269 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

Although the opinion does not discuss attenuation, we find support for our position in *Wilson v. Brister*, 982 S.W.2d 42 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). There, Dr. Brister treated his patient, Carr, one time for depression—on October 29, 1991. *Wilson*, 982 S.W.2d at 43. On November 15, Carr shot herself in the head with a gun given to her by a friend. *Id.* Wilson, Carr's father, sued Dr. Brister in a wrongful death and survival action, complaining that the doctor's omissions were a proximate cause of his daughter's death. *Id.* Dr. Brister moved for summary judgment on the basis that Wilson could not prove causation, and the court granted the motion. *Id.* After noting that Dr. Brister's deposition stated that the goal of hospitalizing a patient with suicidal ideations was to prevent suicide, that Carr's personal history increased the risk of suicide, and that the doctor said she would have hospitalized Carr if Carr were imminently suicidal, but denied that she was, the San Antonio Court examined the claim that the friend's action in giving Carr a gun while knowing that she intended to commit suicide was a break in the causation chain. *Id.* at 44. Also noting that when criminal conduct is foreseeable that conduct does not truncate a previous tortfeasor's liability, the court reversed the summary judgment, stating: "Though Dr. Brister offered proof of *an* intervening cause, she did not conclusively prove that her negligent acts or omissions were not a concurring cause. Because a causation issue remained, [Dr. Brister] did not prove entitlement to summary judgment as a matter of law." *Id.* at 45.

We overrule issue one.

## WAS THE PARENTS' NEGLIGENCE A CAUSE?

■ At the conclusion of the trial, Providence requested that the court inquire of the jury whether any of the Dowells' actions during the time between Lance's visit to the hospital and his suicide were a cause of his suicide. The Dowells respond by saying (1) they had no duty to their adult child with respect to this issue and (2) Lance's actions were not a proper subject of inquiry because of section 93.001 of the Civil Practice and Remedies Code, which provides that suicide is not a defense if it was caused in whole or in part by the defendant's failure to comply with an applicable legal standard. Tex. Civ. Prac. & Rem.Code Ann. § 93.001 (Vernon Supp.2004–05).

■ Providence does not address the question of duty. The Dowells cite two cases: *Boyd v. Texas Christian University*, where the Fort Worth Court declined to impose a duty on the University to control, supervise, or discipline its adult student athletes, and *Villacana v. Campbell*, where, in a suit brought by two murder victims' parents, the Corpus Christi Court affirmed a summary judgment in favor of parents whose son, while living with them, committed the murders. *Boyd v. Texas Christian Univ.*, 8 S.W.3d 758, 760 (Tex.App.-Fort Worth 2000, no pet.); *Villacana v. Campbell*, 929 S.W.2d 69, 75–77 (Tex.App.-Corpus Christi 1996, writ denied). We will follow the reasoning of the Corpus Christi Court on the issue of negligent control:

Liability for negligence requires the existence of a legally cognizable duty. The court decides whether a duty exists under the facts surrounding the occurrence in question. A court can, therefore, properly dispose of a negligence case by summary judgment if it finds no

duty in the actor even assuming all facts alleged in the petition are true.

There is no general duty to control the conduct of third persons. This rule applies even if the actor has the practical ability to control the third person. The law creates exceptions to this rule when the actor and the third person have a special relationship which imposes a duty upon the actor to control the third person's conduct. Included within these special relationships is that of parent/child.

A child is a "person under 18 years of age who is not and has not been married or who has not had the disabilities of minority removed for general purposes." TEX. FAM. CODE ANN. § 11.01(1) (repealed 1995) (recodified at § 101.003(a) (Vernon Supp.1996)). An adult is any other person. *Id.* (recodified at § 101.003(c)). No current Texas law imposes liability on a parent for the actions of an adult child. We hold that, as a matter of law, appellants have no cause of action for negligent control, and the trial court's grant of summary judgment was proper.

*Villacana,* 929 S.W.2d at 75 (case citations omitted). We likewise find no duty on the part of Lance's parents to control his actions. We overrule issue two.

## A MISSING BENEFICIARY

### STANDING TO SUE

▮▮▮ Issue three asserts that the judgment is improper because the Dowells did not assert a claim on behalf of Lance's child, Alec. In issue four, Providence questions the Dowells standing to bring this suit.

The jury charge specifically asked about damages to Jimmy and Carolyn by name. Alec was not mentioned. Without evidence of any interaction or familial relationship between Alec and Lance and without evidence that Lance ever supported or was capable of financially supporting Alec, it would not be improper to proceed without Alec because he would not be entitled to any benefits. *See Henwood v. Richardson,* 163 S.W.2d 256, 258 (Tex.Civ.App.-Texarkana 1942, writ ref'd w.o.m.). Based on Plaintiff's Third Amended Petition, the record also demonstrates that the suit was brought on behalf of all parties entitled to bring a wrongful death suit. *Texas Health Enter., Inc. v. Geisler,* 9 S.W.3d 163, 169–70 (Tex.App.-Fort Worth 1999, pet. dism'd).

The Wrongful Death Act provides a three-month window for any statutory beneficiary to file an action "for the benefit of all." TEX. CIV. PRAC. & REM.CODE ANN. § 71.004(b), (c) (Vernon 1997). If none of the statutory beneficiaries bring an action within the three months, the executor or administrator must bring the action unless requested not to do so by any of the statutory beneficiaries. *Id.* As parents, Jimmy and Carolyn were entitled to bring the action individually. As the administratrix, Carolyn was also entitled to bring the action on behalf of the estate. Since Alec, or his next friend, did not bring a suit within three months, did not object to Carolyn filing as administratrix, and declined an invitation to join the Dowell's case, there is support for the trial court's not abating the wrongful death suit. *See Serv–Air, Inc. v. Profitt,* 18 S.W.3d 652, 664 (Tex.App.-San Antonio 1999, pet. dism'd).

We overrule issues three and four.

## EVIDENTIARY SUPPORT FOR FINDING OF DAMAGES FOR PAIN AND MENTAL ANGUISH

▮▮▮ Providence's fifth and final issue asserts there is no evidence to support the

jury's finding of damages for pain and mental anguish.

In question 5, which asked about the amount of damages that would compensate Lance for (a) pain and mental anguish and (b) funeral and burial expenses, the jury's answer was $400,000. The funeral and burial expenses were $6,815.

■ Damages for pain and mental anguish may be proven by circumstantial evidence. Providence's argument was rejected by the Corpus Christi Court of Appeals in *Spohn Hospital v. Mayer*, 72 S.W.3d 52, 68 (Tex.App.-Corpus Christi 2002), *rev'd on other grounds*, 104 S.W.3d 878 (Tex.2003). There, the court found that the medical examiner's certificate of death that stated "asphyxia by hanging" was some evidence of probative value that would support the jury's finding of damages for pain and mental anguish suffered by the deceased prior to his death. *Id.* As the Dowells point out, Lance's death certificate is almost identical to the certificate in *Mayer*.

We overrule issue five.

## CONCLUSION

We sever the Dowells' claims against Providence and DePaul in this Cause from those against Dr. James C. Pettit pending in Cause No. 10–01–00420–CV. Having overruled all issues, we affirm the trial court's judgment as to Providence and De-Paul.[4]

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

This is an appeal of a wrongful death and survival suit. We should reverse and render. Because the majority does not do so, I respectfully dissent.

### PROCEDURAL PRELUDE

In the past we have had so few opinions withdrawn that no particular problems were created if the opinions were withdrawn by an order separate from the new opinions being issued. The problem is that over the past year we have withdrawn numerous opinions, with and without motions for rehearing, and when on motion for rehearing, with and without requesting responses. Issuing multiple opinions in the same appeal creates confusion. A person can hold in their hands two opinions from this Court, both certified by the clerk as authentic, which are not the same. Our past practice has been that the latter normally does not reference the existence of the earlier opinion that is being withdrawn.

Our past practice did not present a problem when the issuance of another opinion in the same case was rarely done. At least the problem was manageable. But due to the greatly increased frequency of the majority issuing multiple opinions, I thought it was an appropriate time to adopt the procedure utilized by the Texas Supreme Court; to include the order, and explanation if needed, withdrawing the prior opinion as the first paragraph of the new opinion. *See e.g., Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 381 (Tex.2000).

This is a simple procedure for the convenience of anyone reading the opinions to understand, and easily determine which opinion is the Court's final opinion. This process also allows a researcher, interested in the ultimate disposition, to easily track backwards, if necessary, to see the

---

4. The specific monetary awards against Providence and DePaul, respectively, are set out on pages 9–11 of the judgment. Costs, pre- and post-judgment interest, and entitlement to writs and processes are adjudged against these parties on pages 13–14 of the judgment. Providence and DePaul shall pay all costs of this appeal.

development of the final opinion. Because the majority refuses to provide that information in its opinion, I do so in this dissenting opinion.

## PRIOR HISTORY OF THIS APPEAL

The Court's opinion affirming the trial court's judgment, the judgment, and Chief Justice Gray's dissenting opinion, all dated October 6, 2004, were withdrawn November 10, 2004 and the Court's opinion, Chief Justice Gray's dissenting opinion, and the judgment of this date are substituted therefor.

With these comments regarding the history of this appeal, I now proceed to the substance of my dissenting opinion.

## THE DISSENTING OPINION

In Appellants' first issue, they contend that there was no evidence of proximate cause and no evidence that Appellants failed to perform an appropriate psychiatric screening examination. *See* 42 U.S.C. § 1395dd(a) (2000).

Appellees contend that Appellants waived their issue by failing to object to the testimony of one of Appellees' expert witnesses. The cases cited by Appellees, to the extent that they are on point, concern the waiver of objections to the methodological reliability of expert testimony, not the sufficiency of the evidence. *See Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 409 (Tex.1998); *Crown Cent. Petroleum Corp. v. Coastal Transp. Co.,* 38 S.W.3d 180, 190 (Tex.App.-Houston [14th Dist.] 2001), *rev'd,* 136 S.W.3d 227 (Tex. 2004); *Gen. Motors Corp. v. Castaneda,* 980 S.W.2d 777, 780 n. 2 (Tex.App.-San Antonio 1998, pet. denied).[1] By making an objection to the charge, filing a motion to disregard jury questions and for judgment notwithstanding the verdict, and filing a

motion for new trial, all on the grounds that there was no evidence of proximate cause, Appellants preserved their no-evidence complaint. *See Kerr–McGee Corp. v. Helton,* 133 S.W.3d 245, 259 (Tex.2004); *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 220 (Tex.1992).

Lance Dowell was admitted to the Providence Health Center emergency room for treatment of shallow self-inflicted cuts to his wrists. A nurse employed by Appellants performed a psychological evaluation of Lance. Appellees contend that Appellants failed to promulgate or enforce policies for psychological screenings, that the nurse failed to perform an appropriate screening, and that these failures caused Lance's death. The undisputed evidence was that when the nurse evaluated Lance, Lance was lucid, calm, remorseful, stable, and not actively suicidal. There is no evidence that, if Appellants had recommended admission to the DePaul Center, a psychiatric hospital, Lance would have agreed or could have been compelled to be admitted. After Lance was released from Providence to Appellees, and until his death, Appellees saw nothing out of the ordinary about Lance except that he was "more withdrawn." The day that he was released from the hospital, Lance visited with his family, went to a rodeo, and visited with friends. The next day, he had lunch with his family and helped a friend bale hay. About a day and a half after he left Providence, Lance hanged himself. Appellees' expert testified, at most, that had Lance been admitted to DePaul the probability that he would commit suicide upon his release would have been reduced.

Under these facts, there is no evidence that Appellants' conduct was a substantial cause of Lance's death. *See IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Ramos,* 143 S.W.3d 794, 798–800 (Tex.

---

1. *See also Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 231–33

(Tex.2004); *Kerr–McGee Corp. v. Helton,* 133 S.W.3d 245, 252 (Tex.2004).

2004); *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex.2003); *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519–20 (Tex.2002); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343–44 (Tex.1998). Accordingly, we should sustain Appellants' first issue.

We should, then, after sustaining Appellants' first issue, reverse and render judgment that Appellees take nothing from Appellants. Therefore, we should not consider Appellants' other issues.

Because the disposition of the first issue would be dispositive of the appeal, I will not discuss my disagreements, and there are many, with the remainder of the majority's opinion. I note only in passing that an estate, by that name, is not a proper party to litigation. *Embrey v. Royal Ins. Co. of Am.*, 22 S.W.3d 414, 415 n. 2 (Tex.2000); *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex.1975). I also note that two notices of appeal from the same judgment should bear the same docket number on appeal. TEX.R.APP. P. 12.2(c). Docketing this cause and Cause No. 10-01-00420-CV, styled *Pettit v. Dowell*, as two separate appeals was improper.