IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00367-CV

 

Rudy Rodriguez and wife, 

Patricia Rodriguez,

                                                                      Appellants

 v.

 

Kenneth Johnson, Jr. and 

wife, Brenda Robin Johnson,

                                                                      Appellees

 

 

 



From the 66th District Court

Hill County, Texas

Trial Court No. 39,200

 



MEMORANDUM  Opinion










 

          The parties have filed a joint motion
to dismiss the appeal, incorporate their Mediated Settlement Agreement in our
final judgment, and render judgment effectuating their agreement.  See Tex. R. App. P. 42.1(a)(2)(A). 
However, according to the agreement, Appellants were to file a non-suit in this
and the trial court case.  Therefore, to best effectuate the agreement, we
grant the joint motion to the extent that we set aside the trial court’s
judgment without regard to the merits and remand the case to the trial court
for rendition of judgment in accordance with the agreement.  Tex. R. App. P. 42.1(a)(2)(B).

 

                                                                   TOM
GRAY

                                                                   Chief
Justice

 

Before
Chief Justice Gray,

          Justice
Vance, and

          Justice
Reyna

Judgment
set aside and remanded

Opinion
delivered and filed February 8, 2006

[CV06]






nce on each
element of gross negligence; and (3) the trial court abused its discretion by
sustaining the City’s objection to certain testimony and overruling Kirwan’s
objection to certain photographs.  We reverse and remand.

EVIDENTIARY ISSUES

In her third issue, Kirwan argues that the trial
court erred by (1) sustaining the City’s objection to the testimony of Captain
Benjamin Samarippa; and (2) overruling her objection to photographs of Circle
Point Cliff.  We review a trial court’s decision to admit or exclude evidence
under an abuse of discretion standard.  See In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005).

Testimony

            During his deposition, Samarippa, a
firefighter who responded to the scene of Brad’s fall, testified that an
average person would “probably not” “understand that the ground could give way
underneath them.”  Kirwan provided Samarippa’s testimony as evidence in
response to the City’s plea.  The City objected, arguing that the testimony is
speculative.  Kirwan countered that the testimony constitutes admissible lay
witness opinion.  The trial court sustained the City’s objection.

            If a witness is not testifying as an
expert, his “testimony in the form of opinions or inferences is limited to
those opinions or inferences which are (a) rationally based on the perception
of the witness and (b) helpful to a clear understanding of the witness’
testimony or the determination of a fact in issue.”  Tex. R. Evid. 701.  Testimony based on speculation has no
probative value.  See United
Way v. Helping Hands Lifeline Found.,
949 S.W.2d 707, 711 (Tex. App.—San Antonio 1997, writ denied).

            Samarippa testified that he has
trained in Cameron Park, has observed the park cliffs, and was unaware that the
cliff rocks could give way beneath someone.  That an average person would not
understand that the ground could give way is an opinion or inference reasonably
based on Samarippa’s personal perceptions of the cliff conditions.  The
testimony assists the trier of fact in determining whether the condition
alleged is open and obvious, an ultimate issue in the case.  See State v. Shumake, 199 S.W.3d 279, 288 (Tex. 2006) (“A landowner has no duty to warn or protect trespassers from obvious
defects or conditions”).  Accordingly, we cannot say that Samarippa’s testimony
amounted to mere speculation.  The trial court abused its discretion by
granting the City’s objection to Samarippa’s testimony.

Photographs

            The City attached five photographs to
the affidavit of park recreational director Rusty Black as an exhibit to its
plea.  In his affidavit, Black testified to his personal knowledge of the facts
stated therein, identified the date on which the photographs were taken, and
stated that the photographs “accurately portray the scenes at Circle Point
Cliff depicted therein and accurately represent  the scenes depicted therein”
as he had observed them prior to Brad’s death.  At his deposition, Black
testified that he did not know who took the photographs, when they were taken,
or whether they depicted the area from which Brad fell.  Kirwan objected that
the photographs are not properly authenticated.  The trial court overruled
Kirwan’s objection.

“Admissibility of a photograph is conditioned upon
its identification by a witness as an accurate portrayal of the facts, and on
verification by that witness or a person with knowledge that the photograph is
a correct representation of such facts.”  Davidson v. Great Nat’l Life Ins.
Co., 737 S.W.2d
312, 314-15 (Tex. 1987).  The authentication requirement is “satisfied
by evidence sufficient to support a finding that the matter in question is what
its proponent claims.”  Tex. R. Evid.
901(a).

It is not required that Black made the
photographs, observed their making, or knew when they were taken.  See Kessler v. Fanning, 953 S.W.2d 515, 522 (Tex. App.—Fort Worth 1997,
no pet.) (“predicate for
admissibility need not be laid by the photographer, the person photographed, or even a person
who was present when the photograph was taken”).  All that is necessary is testimony from a witness with personal
knowledge that the photographs accurately depict what they are “claimed to
be.”  Tex. R. Evid. 901(b)(1); see
Kessler, 953 S.W.2d at 522 (“any witness who observed the object or scene
depicted in the photograph may lay the predicate”).  Black’s affidavit satisfied this requirement.  The
trial court properly overruled Kirwan’s objection to the photographs.

Because Samarippa’s testimony was improperly
excluded and the photographs were properly admitted, we will consider both when
conducting our analysis.  Kirwan’s third issue is sustained in part and
overruled in part.

RECREATIONAL USE STATUTE

            In her first issue, Kirwan challenges
whether the recreational use statute requires that all premises defect claims
be based on a condition created by the defendant, thereby barring any claim
based on a natural condition.

Sovereign Immunity

“[S]overeign immunity deprives a trial court of
subject matter jurisdiction for lawsuits in which the state or certain
governmental units have been sued unless the state consents to suit.”  Tex. Dep't of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004).  The Tort Claims Act
includes “a limited waiver of the state’s immunity from suits alleging personal
injury or death caused by premises defects.”  Shumake, 199 S.W.3d at
283; see Tex.
Civ. Prac. & Rem. Code Ann. §§ 101.002, 101.021(2), 101.022, 101.025 (Vernon 2005 &
Supp. 2007).  It “further modifies a governmental unit’s waiver of
immunity from suit by imposing the limitations of liability articulated in the
recreational use statute.”  Miranda, 133 S.W.3d at 225; see Tex. Civ. Prac. & Rem. Code Ann. §
101.058 (Vernon 2005).  “The recreational use statute recognizes
that landowners or occupiers, who open their property to the public for
recreational purposes, provide a public benefit.”  Stephen F. Austin State Univ. v. Flynn, 228 S.W.3d 653, 658 (Tex. 2007).  “To encourage this use, the statute limits the
liability of the ‘owner, lessee, or occupant of real property’ who gives
permission to another to enter the premises for recreation.” Id.; see
Tex. Civ. Prac. & Rem. Code Ann.
§ 75.002(c) (Vernon Supp. 2007).  “When injury or death results on state-owned, recreational land,”
the statute limits the state’s duty for premises defects to that “owed by a
landowner to a trespasser.”  Shumake, 199 S.W.3d at 283; see Tex.
Civ. Prac. & Rem. Code Ann. §§ 75.002, 75.003(g), 101.058
(Vernon 2005 & Supp. 2007).  “The limited duty owed a trespasser is not to
injure that person willfully, wantonly, or through gross negligence.”  Miranda,
133 S.W.3d at 225.

Standard of Review

Whether a court has subject matter jurisdiction is
a question of law that we review de novo.  Miranda, 133 S.W.3d at 226.  If a plea to the jurisdiction challenges the pleadings, “we
determine if the pleader has alleged facts that affirmatively demonstrate the
court’s jurisdiction to hear the cause.”  Id.  “We construe the
pleadings liberally in favor of the plaintiffs and look to the pleaders’
intent.”  Id.  If a plea “challenges the existence of jurisdictional
facts, we consider relevant evidence submitted by the parties when necessary to
resolve the jurisdictional issues raised.”  Id. at 227.  “[W]e take as
true all evidence favorable to the nonmovant,” indulging every reasonable inference
and resolving any doubts in the nonmovant’s favor.  Id. at 228.

Analysis

            Kirwan argues that the recreational
use statute permits a premises defect claim based on a natural condition, such
as the structurally unstable cliff rock that collapsed beneath Brad.  She
relies on Miranda to support this position.  In Miranda, the
Texas Supreme Court addressed a claim involving falling tree limbs at a state
park operated by the Department of Parks & Wildlife.  See 133 S.W.3d at 221.  In determining whether the Department’s
plea to the jurisdiction was properly denied, the Court considered whether the
Mirandas’ pleadings were sufficient to establish that the Department was
grossly negligent and whether the Mirandas raised a fact issue regarding the
Department’s gross negligence.  See
id at. 230-32.

A plurality of the Court first determined that
“[t]he Mirandas’ allegation of an injury caused by a tree limb falling on Maria
Miranda constitutes an allegation of a condition or use of real property and is
an allegation of a premises defect.”[1]  Id. at 230 (emphasis added).  However, a majority of the Court determined that the
Mirandas had “failed to raise a fact question regarding the Department’s
alleged gross negligence.”  Id. at 232.  The Court rejected the
Mirandas’ attempt to recast their premises defect claim as one covered by the
Tort Claims Act’s waiver of immunity for injuries arising out of conditions or
use of property:

The allegations in the Mirandas’ third amended
petition concern only the Department’s failure to act to reduce risks of
falling tree limbs and failure to warn the Mirandas of the risk of falling tree
limbs. These allegations comprise the elements of their premises defect
claim. 

 

Id. (emphasis added).  

Based on both the plurality and majority findings
that the Mirandas’ allegations comprise a premises defect claim, Kirwan argues
that Miranda permits a claim based on a natural condition, i.e.,
falling tree limbs.  See id. at 230, 233.  She
contends that, if a natural condition cannot support a premises defect claim,
the Court “engaged in a pointless waste of words” by conducting its gross
negligence analysis.

Kirwan next argues that Shumake, decided
after Miranda, does not prohibit claims based on natural conditions as
long as the condition is not open and obvious.  In Shumake, the Court
addressed a claim where a young girl was swimming in a river at a state-owned
park when she was “sucked underwater by a powerful undertow,” became trapped in a man-made culvert, and
drowned.  199 S.W.3d at 281.

Addressing the denial of the State’s plea to the
jurisdiction, the Court recognized that
the recreational use statute does not “‘limit the liability of [a landowner]
who has been grossly negligent or has acted with malicious intent or in bad
faith.’”  Id. at 286-87.  The statute permits a claim for gross
negligence “[b]ecause gross negligence may result from acts or omissions” and
the statute “does not distinguish between injuries caused by conditions and
activities.”  Id. at 287.  The Court further addressed the conditions
under which “a failure to guard or warn against a dangerous condition may be
considered grossly negligent, malicious or willful:”

[W]e do not hold, or even imply, that a landowner
may be grossly negligent for failing to warn of the inherent dangers of
nature.  A landowner has no duty to warn or protect trespassers from obvious
defects or conditions. Thus, the owner may assume that the recreational
user needs no warning to appreciate the dangers of natural conditions, such as
a sheer cliff, a rushing river, or even a concealed rattlesnake. But a
landowner can be liable for gross negligence in creating a condition that a
recreational user would not reasonably expect to encounter on the property in
the course of the permitted use. 

 

Id. at 288 (internal citations omitted) (emphasis
added).  The Court found the Shumakes’ pleadings “sufficient to state a
premises liability claim under the recreational use statute.”  Id.

Kirwan points to the above italicized language to
support her position that Shumake is not a complete bar to premises
defect claims based on natural conditions, but rather allows claims alleging hidden
natural defects.  She argues that the statute “permit[s] any type of gross
negligence action” and that Shumake expressly refused to limit the “type
of gross negligence liability permitted by the statute.”  See id.
at 287 (rejecting the Department’s argument that “the Legislature was only
concerned about a landowner’s contemporaneous and active conduct;” “[n]othing
in the language indicates that the Legislature intended that gross negligence
should have such a special or limited meaning”).  She relies on Flynn
for additional support:

In Shumake, we held that the recreational
use statute does not foreclose premises defect claims, but rather limits the
landowner’s liability by raising the plaintiff’s burden of proof to that of
gross negligence, malicious intent, or bad faith. We further emphasized that
the statute’s liability limitations should have meaning. Thus, we observed
that landowners have no duty to warn or protect
recreational users from defects or conditions that are open and obvious.

 

228 S.W.3d at 659-60 (internal citations omitted)
(emphasis added).[2] 
Thus, Kirwan urges that the Court’s
holding that “a landowner can be liable for gross negligence in creating a
condition” is merely an example of a type of actionable claim, not a mandate
excluding all claims based on natural conditions or requiring that all claims
be based on conditions created by the defendant. [3] 
Shumake, 199 S.W.3d. at 288.

             

The City argues that Shumake “limited
application of the gross negligence standard in failure to warn cases to claims
that a governmental entity is grossly negligent in creating a condition
that a recreational user would not reasonably expect to encounter in the course
of a permitted use.”  Thus, the City contends that it cannot be held “grossly
negligent for failing to warn of the inherent dangers of nature.”

We do not read Shumake to suggest that all
natural conditions are per se open and obvious or that a natural
condition may never serve as the basis for a premises defect claim. 
Under Shumake, “[a] landowner has no duty to warn or protect trespassers
from obvious defects or conditions.”  199 S.W.3d at 288 (emphasis
added).  A “landowner can be liable for gross negligence in creating a
condition,” but is not necessarily liable for creating such a condition.  Id. (emphasis added).  The natural conditions identified in Shumake, “a sheer
cliff, a rushing river, or even a concealed rattlesnake,” are open and obvious
conditions that a person might reasonably expect to encounter in a park.  Id.  These conditions yield predictable results, i.e., falling off a cliff,
being swept away by rushing water, or suffering a snake bite.  Such conditions
require no warning.  Other natural conditions, however, may pose a hidden
danger that a person might not reasonably expect to encounter.  Had the Supreme
Court intended to exclude premises defect claims based on hidden or latent
dangers, it could have simply done so without limiting a landowner’s duty to
open and obvious conditions.  We, therefore, hold that the recreational use
statute permits premises defect claims based on natural conditions as long as
the condition is not open and obvious and the plaintiff furnishes evidence of
the defendant’s alleged gross negligence.  See Shumake, 199 S.W.3d at
288; see also Miranda, 133 S.W.3d at 233-34.

Because we so hold, we must determine whether
Kirwan’s allegations of structurally unstable cliff rock constitute a hidden or
latent condition for which a premises defect claim may be brought.  The City
argues that “the recreational user needs no warning to appreciate the dangers
of walking or sitting on crumbling limestone ‘more than 60 feet’ above the
ground at the base of the cliff.”  According to the City, the ground was not
composed of “solid rock ground,” as evidenced by crumbing rocks depicted in its
photographs.  In his affidavit, Black described Circle Point Cliff as consisting of “loose rock and natural cracks.”  He stated that the “danger of slipping
on the loose rock and falling off the cliff, as well as the danger that the
limestone could continue to crack, should have been obvious to anyone who might
walk or sit on the limestone cliff.”

Crumbling rocks and cracks do not conclusively
prove that the danger of structurally unstable cliff rock is open and obvious. 
As Kirwan points out, crumbling rock may alert the average person to the risk
of slipping and falling, but certainly not that the ground will simply fall
apart beneath him.  In fact, Samarippa testified that he did not know the
ground was unstable or could collapse and that an average person would probably
not understand this risk.  As Samarippa’s testimony indicates, a visual
inspection of the cliffs in Cameron Park would not warn a park patron that the
ground could give way beneath him.  We cannot say that structurally unstable
cliff rock is an open and obvious condition that a person might reasonably
expect to encounter.

Accordingly, we sustain Kirwan’s first
issue.       

GROSS NEGLIGENCE

In her second issue, Kirwan argues that the record
contains more than a scintilla of evidence on the elements of gross
negligence.  Because the City’s plea challenged Kirwan’s pleadings and presented
evidence controverting Kirwan’s jurisdictional allegations, we must consider
(1) whether Kirwan’s pleadings allege a premises defect; and (2) whether Kirwan
presented sufficient evidence to raise a fact question as to the City’s alleged
gross negligence.  See Miranda, 133 S.W.3d at 226-28.

Kirwan’s Pleadings

To state a claim under the recreational use statute,
Kirwan must allege sufficient facts to establish that the Department was
grossly negligent.  See Shumake, 199 S.W.3d at 281; see also Miranda,
133 S.W.3d at 225.  The pleadings need only provide a “plain and concise”
statement of the cause of action “sufficient to give fair notice of the claim
involved.”  Tex.
R. Civ. P. 45(b); Tex. R. Civ. P. 47(a).  “That an allegation be evidentiary or be of legal
conclusion shall not be grounds for objection when fair notice to the opponent
is given by the allegations as a whole.”  Tex. R. Civ. P.
45(b).

According to Kirwan’s second amended petition,
Brad was “sitting on solid rock ground” when “[s]uddenly and without warning,
the solid rock ground collapsed underneath him,” causing him to fall “more than
60 feet to the ground below.”  Kirwan alleged that (1) “the rock in Cameron
Park posed an extreme risk of danger due to its propensity to collapse;” (2)
the condition is “not open and obvious to the average lay person” who would
expect the ground to be safe, not “unstable and liable to either give way…or if
on the path below, to have rock walls shearing and falling on the park patron;”
(3) the condition is an “uncommon, hidden peril or danger on the land that is
not inherent in the use to which the land was put and that would not be
reasonably discovered or avoided by Brad McGehee or a similarly situated
person;” (4) the City had “actual, subjective awareness” of this dangerous
condition; (5)“other park patrons have died or been seriously injured by the
condition of these premises;” (6) the City received a report warning of
dangerous rock falls and advising the City to post signs warning of “potentially
fatal rock falls;” (7) the City’s failure to “warn or guard against” this
danger amounted to gross negligence; and (8) the City’s failure to act involved
an “extreme degree of risk considering the probability and magnitude of harm to
others posed by the not open and obvious condition of the ground in the park”
and it “therefore proceeded with conscious indifference [to] the rights,
safety, and welfare of others.”  Kirwan plainly alleged that the City’s conduct
amounted to gross negligence.  

The City argues that Kirwan’s pleadings are
insufficient because she does not allege that “the City was grossly negligent
‘in creating a condition that a recreational user would not reasonably
expect to encounter on the property in the course of the permitted use.’”  As we
held above, the recreational use statute permits claims based on hidden
natural conditions, such as the structurally unstable cliff rock in this case. 
Kirwan was not required to plead that the City was grossly negligent in creating
a condition.

The City also contends that Kirwan relies on the
“ordinary premises liability standard,”[4] not
the gross negligence standard required by the recreational use statute.  We
disagree.  Kirwan pleaded that the City was grossly negligent because it had
“actual, subjective awareness” of an extreme degree of risk and proceeded with
“conscious indifference [to] the rights, safety, and welfare of others.”  Whether
the City failed to warn or protect patrons from this danger goes to the City’s
conscious indifference.  Kirwan’s pleadings as a whole are sufficient to state
a claim under the recreational use statute.  See Tex. R. Civ. P. 45(b); see also Shumake,
199 S.W.3d at 281; Miranda, 133
S.W.3d at 225, 232.

Evidence of Gross Negligence

Gross negligence constitutes an act or omission:
(1) “which when viewed objectively from the standpoint of the actor at the
time of its occurrence involves an extreme degree of risk, considering the
probability and magnitude of the potential harm to others;”
and (2) “of which the actor has actual, subjective awareness of the
risk involved, but nevertheless proceeds with conscious indifference to the
rights, safety, or welfare of others.”  Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (Vernon Supp. 2007); see Miranda,
133 S.W.3d at 225; see also Flynn, 228 S.W.3d at 660.  “‘[E]xtreme
risk,’ means not a remote possibility of injury or even a high probability of
minor harm, but rather the likelihood of serious injury to the plaintiff.”  Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001).  “[I]t is the defendant’s state of mind - whether
the defendant knew about a peril but nevertheless acted in a way that
demonstrated that he did not care about the consequences - that separates
ordinary negligence from gross negligence.”  Miranda, 133 S.W.3d at 232.

Actual, Subjective Awareness of an Extreme Degree
of Risk

The City was aware of other incidents where patrons had been injured as
a result of conditions in the park.  Black recalled four “incidents where falls
occurred.”  The record does not indicate that these other accidents resulted
from the ground collapsing.  In fact, Black testified that he was unaware of
any conditions in the park where the ground appears to be solid, but which is
“actually unstable and can give way.”  He testified that if he were aware of
such a condition, something would be done to “prevent that potential problem
from occurring.”

However, Kirwan argues that the City had received
a report identifying the risk of structurally unstable cliff rock.  A graduate
student in geology from Baylor University prepared a report to “conduct a
Preliminary Rockfall Hazard Assessment” of Emmons Cliff/Lovers Leap located in
Cameron Park.  The purpose of the report was to “determine the critical areas
of potential rockfalls” and provide the City with a “guideline for taking the
next step in protecting pedestrians along the path.”  The report states that
“[t]here are significant reasons to believe that rock falls have occurred in
the recent past” and “‘[t]here is reason to worry that a pedestrian may be hurt
from a future rockfall event.”  The report explained that “slab failure may
cause a more significant failure to occur from above” and “[b]locks falling as
a result of toppling from any height can cause a significant amount of damage
to people and property.”  Fault plain wedge failure was the “most major type of
failure” observed at the cliffs and “may be the most hazardous rockfall due to
the massive volume of rock generally observed to be associated with this type
of failure.”  “Greater than 2500 cubic feet of rock associated with the plane
wedge failure could come crashing down at any time.”  The report advised that
“[s]igns must be erected warning pedestrians of potentially fatal rock falls”
and provided options to “stabilize rock slopes, and protect people and
property.”

The
City contends that this report does not constitute evidence of the City’s
knowledge because: (1) the report does not address the cliff from which Brad
fell; and (2) the report addresses only the risk of rocks falling onto the
paths below the cliffs and does not advise of the “specific peril,” the ground
collapsing, that caused Brad’s death.  Kirwan replies that the City need not possess
knowledge of the “exact sequence and means by which the dangerous condition
caused Brad’s death.”  (citing Providence Health Ctr.
v. Dowell, 167 S.W.3d 48, 53-54 (Tex. App.—Waco 2005, pet. filed) (“Foreseeability
does not require that the person who creates the dangerous situation anticipate
the precise manner in which the injury will occur; instead, the injury need
only be of a general character that the actor might reasonably anticipate”) and
Taylor
v. Carley, 158 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (same)); see Harrison, 70 S.W.3d at
785.

According to Black’s affidavit, Circle Point Cliff is composed of limestone, the same stone as the cliffs described in the
report.  That the report focuses on one particular cliff does not authorize the
City to ignore other similar areas in the park.  Awareness of a problem with
one cliff should alert the City to the possibility of similar problems with
other similar cliffs.  Moreover, the report identifies the risk of large
segments of rock breaking away and falling.  Just as those rocks could cause
injury by falling onto patrons using the paths below, they could also cause
injury to patrons sitting or standing on the rocks as they give way and fall to
the paths below.  Both scenarios involve the same hazardous condition,
structural instability of the rocks.  That the ground could collapse beneath
someone is certainly a possibility inherent in the risk of the rock falls as
described in the report.

In light of the report, we cannot say that the
record contains no evidence of an extreme degree of risk, i.e.,
structurally unstable cliff rock, or that the City possessed actual, subjective
awareness of this risk.  A plaintiff may establish the defendant’s mental state
– the defendant’s state of mind – by circumstantial evidence.  See Harrison, 70 S.W.3d at 785.  The report is some evidence that the City had actual,
subjective awareness.

Conscious Indifference to an Extreme Degree of
Risk

This is not a case where the City wholly failed to
act.  Prior to Brad’s death, the City
had constructed a low wall obstructing access to the cliff and posted signs
instructing patrons not to go beyond the wall.  Kirwan, nevertheless, contends
that the City acted with conscious indifference by failing to adequately
warn or protect patrons of the specific danger of structurally unstable rock.

Black admitted that the City’s existing signs
merely read, “for your safety
do not go beyond wall,” and do not
warn of unstable rock, explain the type of hazard existing beyond the wall, or
describe any type of hazard or danger.  The
report specifically advised the City to post signs warning of “potentially
fatal rock falls.”  Yet, City Manager
Larry Groth testified that he was unaware that the City took any action
“related to the study.”  After Brad’s
death, the City installed fencing and the parks department held a meeting
identifying the need to post “signs warning of falling rocks on trails,”
“[i]ncrease patrols in parks when events attract spectators to the cliffs,” and
“[e]ducate the public about the instability of limestone.”

Although not in the context of the recreational
use statute, Texas courts have addressed the adequacy of warnings.  See Tex.
Dep’t of Transp. v. Gutierrez,
No. 04-06-00583-CV, 2007 Tex. App. Lexis 7216, at *18-19 (Tex. App.—San Antonio Sept. 5, 2007, no pet. h.) (evidence “supported a lack of adequate warning” in light of expert testimony
that “Loose Gravel” sign “failed to specify the hazard” because “loose gravel
in and of itself is not a hazard, and drivers could simply interpret the sign
as warning against damage to their vehicles and not as a warning that a hazard
existed that would cause them to lose control of their vehicle”); see also
Tex. Dep’t of Transp. v. McHenry, No. 14-95-00290-CV, 1996 Tex. App. Lexis 5638, at *6-7 (Tex. App.—Houston [14th Dist.] Dec. 19, 1996, no writ) (not designated for publication) (“signs warning of an intersection, curve or grooved
pavement [do not] reasonably alert a motorist to a danger of water standing on
the road”); Smither v. Texas
Utilities Elec. Co., 824
S.W.2d 693, 694-96 (Tex. App.—El Paso 1992, writ dism’d) (signs stating, “DANGER, KEEP OUT, DEEP
WATER-STRONG CURRENT, ‘STAY AWAY!’ FOR YOUR OWN SAFETY’” evidenced a “conscious
concern” for the “safety even of trespassers”); State v. McBride, 601 S.W.2d 552, 557 (Tex. App.—Waco 1980,
writ ref’d n.r.e.) (cones, a
barricade, a “SLOW” sign, and a “35 MPH” sign were a “long way from warning of
the slick, muddy condition of the road, which condition was within the peculiar
knowledge of Appellant, and of which condition the evidence shows that
Plaintiff-Appellee had no knowledge until it was too late”).

The City’s existing signs indicate some “conscious
concern” for the safety of park patrons.  See Smither, 824 S.W.2d at 696; see also Guadalupe-Blanco River Auth. v. Pitonyak, 84 S.W.3d 326, 341 (Tex. App.—Corpus Christi
2002, no pet.) (“sign warning boaters
of the dangerous currents, whether inadequate or misleading or not, would
appear to negate a claim of conscious indifference to the rights, safety or
welfare of others”).  However, these signs not only fail to warn of
structurally unstable ground, but they fail to warn of any potential
hazard.  We cannot say that these signs are adequate as a matter of law.

Accepting as true all evidence favorable to
Kirwan, indulging all inferences in her favor, and resolving all doubts in her
favor, we hold that Kirwan’s pleadings and evidence raise fact questions as to:
(1) the City’s actual, subjective awareness; and (2) whether the City acted
with conscious indifference.  See Harrison, 70 S.W.3d at
785 (“some evidence of care does not defeat a
gross-negligence finding”).  Kirwan has raised fact questions as to the City’s
alleged gross negligence.  We sustain her second issue.

CONCLUSION

Having determined that the recreational use
statute does not bar premises defect claims based on hidden natural defects and
that Kirwan has raised fact questions as to the City’s gross negligence, we
reverse the judgment and remand this cause to the trial court for further
proceedings consistent with this opinion.

 

   

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief Justice Gray dissents without a separate opinion
but notes that there are many reasons he can join no part of the majority
opinion or judgment)

Reversed and remanded 

Opinion delivered and
filed January 9, 2008

[CV06]

 









[1]               We note that a plurality opinion has little precedential value,
if any.  See Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 176 (Tex. 1994).





[2]               Flynn did not involve a
natural condition.  See Stephen
F. Austin State Univ. v. Flynn,
228 S.W.3d 653, 655 (Tex. 2007).

 





[3]
              Kirwan further argues that
other types of premises liability cases have recognized claims based on natural
conditions.  See County of
Harris v. Eaton, 573 S.W.2d 177,
180 (Tex. 1978) (hole in the
highway); see also Stewart
v. City of Corsicana, 211 S.W.3d
844, 851 n.5, 852 (Tex. App.—Waco 2006, pet. filed) (flooded road); Texas
Dep't of Transp. v. Cotner, 877 S.W.2d 64, 65, 67 (Tex. App.—Waco 1994,
writ denied) (icy bridge); McVicker v. Johnson County, 561 S.W.2d
610, 610-611 (Tex. Civ. App.—Waco 1978, writ ref’d n.r.e.) (flooded road); State
Dep’t of Highways & Pub. Transp. v. Kitchen, 867 S.W.2d 784, 786 (Tex. 1993) (icy bridge); Villegas v. Tex. DOT, 120 S.W.3d 26, 33-34 (Tex. App.—San Antonio
2003, no pet.) (water on the road); Graham v. Tyler County, 983 S.W.2d 882, 885 (Tex. App.—Beaumont 1998,
pet. denied) (washout); Chappell v. Dwyer, 611 S.W.2d 158, 161 (Tex.
Civ. App.—El Paso 1981, no writ) (arroyo);
Miranda v. State, 591 S.W.2d 568, 569 (Tex. Civ. App.—El Paso
1979, no writ)  (flood
water on highway). These cases may lend some support to Kirwan’s argument, but
as the City points out, these cases address natural conditions in the context
of the Tort Claims Act, not the recreational use statute, and so are not
directly on point.





[4]
              “To establish liability for a
premise defect under the TTCA, among other things, a plaintiff must plead and
prove either willful, wanton or grossly negligent conduct, or
that the defendant had actual knowledge of the dangerous condition, the
plaintiff did not, and the defendant failed to warn of the condition or make it
safe.”  City of Houston v. Harris, 192 S.W.3d 167, 175 (Tex. App.—Houston [14th
Dist.] 2006, no pet.) (emphasis added).